UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                        :

ELOISE GORDON-MALLETT,
                                        :

                Plaintiff,         :

                                          :          22-cv-1159 (LJL)

      -v-                      :

                                          :        OPINION AND ORDER

MOUNT SINAI HOSPITALS GROUP, INC. and THE
MOUNT SINAI HOSPITAL,              :

                                          :

                Defendants.      :

                                          :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants Mount Sinai Hospitals Group, Inc. and the Mount Sinai Hospital (together, "Mount Sinai" or "Defendants") move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on all of the claims of plaintiff Eloise Gordon-Mallett ("Plaintiff").  Dkt. No. 45.  For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

      The following facts are taken from the parties' Southern District of New York Local Rule 56.1 statements and the materials submitted in connection with the instant motion, and are undisputed for purposes of this motion except where otherwise stated.[1]  *See Robinson v. De Niro*, 2023 WL 4862772, at *1 (S.D.N.Y. May 25, 2023).  The Court construes the facts in Plaintiff's

---

[1] Southern District of New York "Local Rule 56.1 states that the moving party's 56.1 statement will be deemed to be admitted unless controverted and requires that such denials be supported by a specific citation to admissible evidence.  Accordingly, any of the [Defendants'] Rule 56.1 Statements that [Plaintiff] do[es] not specifically deny—with citations to supporting evidence— are deemed admitted for purposes of [Defendants'] summary judgment motion."  *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 602 (S.D.N.Y. 2013) (citations omitted) (quoting *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010)).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__4/8/2024__

favor, as the non-moving party.  *See Barzilay v. City of New York*, 610 F. Supp. 3d 544, 562

(S.D.N.Y. 2022).

Plaintiff has been an employee of Mount Sinai since May 1991, when she began working

as a Registered Nurse in the hemodialysis unit.  Dkt. No. 52 ¶ 2; Dkt. No. 55 ¶ 2.  Upon joining

Mount Sinai, Plaintiff received a copy of the employee handbook, which stated that Mount Sinai

policy prohibits all forms of employment discrimination and retaliation and explained that

employees who experience or witness discrimination or harassment should lodge complaints

with their immediate supervisors, the heads of their departments, or human resources.  Dkt. No.

52 ¶¶ 15–17; Dkt. No. 55 ¶¶ 15–17.  After a stint at the telemetry unit at Mount Sinai's

Roosevelt Hospital facility, Dkt. No. 52 ¶ 3; Dkt. No. 55 ¶ 3, Plaintiff transferred to Mount

Sinai's critical care unit, Dkt. No. 52 ¶ 4; Dkt. No. 55 ¶ 4.

In 2011, Plaintiff became a Nurse Practitioner ("NP").  Dkt. No. 52 ¶ 5; Dkt. No. 55 ¶ 5.

NPs are advanced practice providers who diagnose and treat conditions and prescribe

medications to patients.  Dkt. No. 52 ¶ 13; Dkt. No. 55 ¶ 13.  Their duties include meeting with

patients to gather information, synthesizing that information into summaries for the attending

physicians, and then drafting medical record notes for those physicians to co-sign.  Dkt. No. 52

¶ 14; Dkt. No. 55 ¶ 14.  Plaintiff served as an NP in Mount Sinai's Radiology Department from

2012 to 2015 and in its Cardiology Department from 2015 to 2017.  Dkt. No. 52 ¶¶ 6–7; Dkt.

No. 55 ¶¶ 6–7.

In early 2017, Plaintiff applied for an NP position in Mount Sinai's

Hematology/Oncology Department ("Hem/Onc").  *See* Dkt. No. 52 ¶¶ 1, 9; Dkt. No. 55 ¶¶ 1, 9.

Dr. Khalid Dar met with Plaintiff and interviewed her for the role.  Dkt. No. 52 ¶ 9; Dkt. No. 55

¶ 9.  Plaintiff was hired after the interview and began working in Hem/Onc in February 2017.

Dkt. No. 52 ¶¶ 1, 9; Dkt. No. 55 ¶¶ 1, 9.  Plaintiff worked closely with Dr. Dar in Hem/Onc as he was her collaborating physician—a position that required Plaintiff and Dr. Dar to rely on each other's clinical knowledge, skills, and judgment.  Dkt. No. 52 ¶¶ 9–11; Dkt. No. 55 ¶¶ 9–11.  Plaintiff also worked alongside Dr. Madhuri Devabhaktuni, who joined Hem/Onc in February 2018.  Dkt. No. 52 ¶ 12; Dkt. No. 55 ¶ 12.

During her tenure at Hem/Onc, Plaintiff had several meetings with administrators and physicians regarding her job responsibilities.  On August 10, 2017, Plaintiff met with Toby Bressler, the Senior Director of Nursing for Oncology, and Eumenide Vernet, a Nurse Manager, to discuss Plaintiff's expectations for her role.  Dkt. No. 52 ¶¶ 18–19; Dkt. No. 55 ¶¶ 18–19.  Bressler and Vernet told Plaintiff that Mount Sinai expected her to collaborate with the attending physician to determine which patients she should meet with during her rounds and the types of notes to write.  Dkt. No. 52 ¶ 19; Dkt. No. 55 ¶ 19.  Bressler and Vernet also asked Plaintiff to share her patient volume spreadsheet with them so they could monitor her performance, and reminded Plaintiff to communicate in a positive, non-judgmental manner.  Dkt. No. 52 ¶ 19; Dkt. No. 55 ¶ 19.

Dr. Dar spoke with Plaintiff on May 11, 2018.  Dkt. No. 52 ¶ 20; Dkt. No. 55 ¶ 20.  He instructed Plaintiff to conduct rounds by herself and then present the information she gathered to Drs. Dar and Devabhaktuni at noon each day, to maintain a spreadsheet of all Hem/Onc patient pathology results, and to handle all communications with the primary care team and patient family members before relaying necessary information to Drs. Dar and Devabhaktuni.  Dkt. No. 52 ¶ 21; Dkt. No. 55 ¶ 21.  Dr. Dar also explained that although Plaintiff would not ordinarily meet with new consults—as physicians typically handled that responsibility—she would be expected to do so if several came in at once.  Dkt. No. 52 ¶ 21; Dkt. No. 55 ¶ 21.  Plaintiff

emailed Dr. Dar the following day, copying Bressler.  Dkt. No. 52 ¶ 22; Dkt. No. 55 ¶ 22; *see* Dkt. No. 46-1 at 100.  In her email, Plaintiff memorialized her discussion with Dr. Dar and wrote:  "The expectations you outlined are a great deviation from my current role and responsibilities."  Dkt. No. 46-1 at 101; *see* Dkt. No. 52 ¶ 22; Dkt. No. 55 ¶ 22.  Bressler responded that the expectations Dr. Dar had described were consistent with NPs' duties across Mount Sinai.  Dkt. No. 52 ¶ 23; Dkt. No. 55 ¶ 23.

Around that time, while preparing Hem/Onc for upcoming accreditation assessments, Bressler discovered that Plaintiff did not have an Oncology Nursing Society ("ONS") chemotherapy biotherapy provider card or an Oncology Certified Nurse ("OCN") certification, both of which were required to work in Mount Sinai's oncology unit.  Dkt. No. 52 ¶¶ 24–25; Dkt. No. 55 ¶¶ 24–25.  Bressler also believed that Plaintiff had not attended the requisite monthly lectures at Mount Sinai's Tisch Cancer Institute.  Dkt. No. 52 ¶ 25; Dkt. No. 55 ¶ 25. Plaintiff's lack of credentials concerned Bressler, given Plaintiff's role in diagnosing, treating, and prescribing medicine for Hem/Onc's vulnerable patients.  Dkt. No. 52 ¶ 28; Dkt. No. 55 ¶ 28.  Accordingly, Bressler met with Plaintiff to set goals that would enable Plaintiff to satisfy the requirement for working in an oncology practice by the end of the year.  Dkt. No. 52 ¶ 29; Dkt. No. 55 ¶ 29.  After the meeting, Bressler sent Plaintiff an email recapping Plaintiff's objectives: obtaining an ONS card, acquiring the OCN certification, gaining experience with bone marrow biopsies, and attending Tisch Cancer Institute lectures at least once per month. Dkt. No. 52 ¶ 30; Dkt. No. 55 ¶ 30.  Plaintiff responded with a timeframe for each goal.  Dkt. No. 52 ¶ 32; Dkt. No. 55 ¶ 32.  She committed to obtain an ONS card by October 2018, earn her OCN certification by December 2018, perform ten bone marrow biopsies by December 2018, and attend the lectures each month beginning in June 2018.  Dkt. No. 52 ¶ 32; Dkt. No. 55 ¶ 32.

When Bressler and Karen deVries, a Nurse Manager, spoke with Plaintiff again on June 25, 2018, they reminded her of her ONS card and OCN certification deadlines and reiterated Mount Sinai's expectations regarding her job duties.  Dkt. No. 52 ¶¶ 33–34; Dkt. No. 55 ¶¶ 33–34.

By the summer of 2018, Plaintiff's relationship with Dr. Dar had deteriorated.  Although Plaintiff and Dr. Dar had "worked very well together in 2017," Plaintiff observed a change in Dr. Dar's behavior after Dr. Dar was promoted to a more senior position in Hem/Onc.  Dkt. No. 52 ¶¶ 98–99; Dkt. No. 55 ¶¶ 98–99.  According to Plaintiff, Dr. Dar started making inappropriate and bigoted remarks towards her.  Plaintiff is an African American woman originally from Jamaica who is over the age of forty.  *See* Dkt. No. 52 ¶¶ 95, 101–102; Dkt. No. 55 ¶¶ 95, 101–102.  Plaintiff testified at her deposition that Dr. Dar implied she was promiscuous by asking her multiple times if the Hem/Onc facility's security guard was one of her men.  Dkt. No. 53-1 at 26:9–12.  At other times, Dr. Dar was more explicit, as Plaintiff heard him say multiple times that African American women are promiscuous.  *Id.* at 28:3–19.  Dr. Dar also repeatedly stated that all Jamaicans do is smoke marijuana and drink rum.  *Id.* at 30:24–31:6; *id.* at 33:17–22.  And he mocked Plaintiff by imitating her Jamaican accent.  *Id.* at 31:7–11, 31:29–25; *see also id.* at 33:4–15 (stating he did so "[m]ore than ten" times).  Twice, while Plaintiff was using her computer, Dr. Dar invaded her personal space by grabbing a computer mouse from her.  *Id.* at 162:4–5.  On one of those occasions, Plaintiff asked him not to, *id.* at 162:10–13; Dr. Dar responded by telling Plaintiff to "shut up" and asking her "if [she] was on [her] period," *id.* at 162:14–20.  When Dr. Dar wanted to know the brand of Plaintiff's coat, he grabbed the collar of her jacket while she was wearing it to see the label.  *Id.* at 32:6–9.  Finally, although he is several years her senior, Dkt. No. 52 ¶ 102; Dkt. No. 55 ¶ 102, Dr. Dar made disparaging remarks about Plaintiff's age.  Dr. Dar thought she was moving too slowly, so he snapped his fingers at her and

said "hurry up or else I'll get someone younger to come and do your job." *Id.* at 35:3–12.

Plaintiff testified that he threatened to replace her with a younger employee on two separate

occasions. *Id.* at 35:22.

On July 12, 2018, Dr. Dar emailed Bressler and wrote that he and Dr. Devabhaktuni were

disappointed with her job performance and attitude. Dkt. No. 52 ¶¶ 35–36; Dkt. No. 55 ¶¶ 35–

36. He described how, for example, when he asked Plaintiff to let the Hem/Onc team know that

a patient missed an appointment, Plaintiff reacted by talking over him and chiding him for not

telling her in the morning as it was already 3:00 P.M. and therefore too late for her to do

anything else that day. Dkt. No. 52 ¶ 36; Dkt. No. 55 ¶ 36. Dr. Dar told Bressler that he asked

Plaintiff to perform rounds with him, but that Plaintiff responded that she had already seen the

patients so Dr. Dar should see them alone. Dkt. No. 52 ¶ 37; Dkt. No. 55 ¶ 37. Accordingly, Dr.

Dar asked Bressler to "have a word" with Plaintiff to "see what it is that's bothering her as both

Dr Deva[bhaktuni] and I don't think we work as a team." Dkt. No. 52 ¶ 38; Dkt. No. 55 ¶ 38.

The next day, Plaintiff met with Ann McNicholas, Mount Sinai's Director of Labor

Relations, to lodge a complaint about Dr. Dar's behavior. Dkt. No. 52 ¶ 39; Dkt. No. 55 ¶ 39.

Plaintiff later testified that she gave McNicholas "a brief summary of what[ had] been

transpiring." Dkt. No. 53-1 at 188:21. Specifically, Plaintiff provided her version of the incident

in which the patient had missed on appointment. She said she was hungry and had not yet eaten

lunch when Dr. Dar approached her that day. Dkt. No. 52 ¶ 40; Dkt. No. 55 ¶ 40. Plaintiff told

Dr. Dar that she was on her way to lunch and Dr. Dar called her lazy and threatened to report her

to Bressler. Dkt. No. 52 ¶ 41; Dkt. No. 55 ¶ 41. Plaintiff also described how Dr. Dar had

humiliatingly grabbed her mouse. Dkt. No. 52 ¶ 42; Dkt. No. 55 ¶ 42.

Two days later, on July 15, 2018, Plaintiff sent a follow-up email to McNicholas, pasting a complaint Plaintiff had written about Dr. Dar for the New York State Board of Nursing.  Dkt. No. 52 ¶ 44; Dkt. No. 55 ¶ 44.  In that complaint, Plaintiff said that Dr. Dar had been rude, dismissive, and disrespectful since January 2018.  Dkt. No. 52 ¶ 44; Dkt. No. 55 ¶ 44.  She described how Dr. Dar had told her to "shut up" twice, referred to Plaintiff as "she" instead of by her name, grabbed a computer mouse from her hand, asked her if she was on her period, and took a chart from out of her hands.  Dkt. No. 52 ¶ 44; Dkt. No. 55 ¶ 44.  Plaintiff further complained that Dr. Dar had screamed at her once for failing to arrange coverage when she was absent from Hem/Onc.  Dkt. No. 52 ¶ 44; Dkt. No. 55 ¶ 44.

In response to Plaintiff's complaints against Dr. Dar, Clarissa Jones-Winter—Associate Dean for Faculty, Staff, and Trainee Relations at the Icahn School of Medicine at Mount Sinai— interviewed Dr. Dar.  Dkt. No. 52 ¶ 47; Dkt. No. 55 ¶ 47.  Dr. Dar denied that he had yelled at Plaintiff or asked her if she was on her period.  Dkt. No. 52 ¶ 48; Dkt. No. 55 ¶ 48.  He also explained that he had not grabbed the mouse in a hostile manner, but rather did so for ease of directing her.  Dkt. No. 52 ¶ 48; Dkt. No. 55 ¶ 48.  Based on Dr. Dar's conversation with Jones-Winter, McNicholas determined that Dr. Dar had not acted inappropriately and that Plaintiff had issues performing her role as an NP in Hem/Onc.  Dkt. No. 52 ¶ 50; Dkt. No. 55 ¶ 50.

Bressler and deVries met with Plaintiff and a delegate of her union, the New York State Nurses Association, on August 6, 2018.  Dkt. No. 52 ¶¶ 8, 51; Dkt. No. 55 ¶¶ 8, 51.  They discussed an incident in which Plaintiff had failed to complete an assignment in a timely manner and had not asked for clarification or assistance.  Dkt. No. 53 ¶ 53; Dkt. No. 55 ¶ 53.  Bressler and deVries instructed Plaintiff to inform them immediately if she had difficulty completing her assigned tasks during work hours.  Dkt. No. 52 ¶ 52; Dkt. No. 55 ¶ 52.  Two weeks later,

Plaintiff emailed Bressler and deVries that Dr. Dar had begun ignoring her, turning away from her or pretending to be engaged in other tasks whenever she tried to speak with him.  Dkt. No. 52 ¶ 54; Dkt. No. 55 ¶ 54; *see* Dkt. No. 46-1 at Defs. Ex. 12.  Plaintiff wrote that she was unable "to discuss patients or care plans with anyone" and that Dr. Dar excluded her from sign-out emails. Dkt. No. 46-1 at Defs. Ex. 12.  She expressed concern that Dr. Dar's actions had jeopardized her ability to perform her assignments and was "a serious patient safety risk."  *Id.*  Plaintiff emailed Bressler and deVries again on August 23, 2018:  "I am planning to take my originally planned vacation next week and would like to take an additional 2 weeks after that to seek some peace and calm and recover from the emotional trauma I have experienced in connection with this series of incidents."  Dkt. No. 53-7.

Plaintiff, accompanied by two union delegates, met with Bressler and deVries again on September 5, 2018.  Dkt. No. 52 ¶ 55; Dkt. No. 55 ¶ 55.  Bressler and deVries chided Plaintiff for failing to obtain her ONS provider card, which Plaintiff had agreed to acquire by October 2018.  Dkt. No. 52 ¶ 56; Dkt. No. 55 ¶ 56.  During that meeting, Plaintiff said that the work environment in Hem/Onc had recently improved, but that she still felt that there were communication breakdowns with the midday daily huddles.  Dkt. No. 52 ¶ 57; Dkt. No. 55 ¶ 57. Bressler spoke with Drs. Dar and Devabhaktuni the following day and instructed them to copy Plaintiff on all weekend sign-out emails, send Plaintiff lists of tasks that they wanted her to complete, and to apprise Plaintiff when they were having daily huddles so she could participate. Dkt. No. 52 ¶ 58; Dkt. No. 55 ¶ 58.

Bressler and Maria Venzina, Mount Sinai's Chief Nursing Officer, determined that in the interest of patient care and safety Plaintiff could not continue to serve as an NP in Hem/Onc. Dkt. No. 52 ¶ 58; Dkt. No. 55 ¶ 58.  On September 14, 2018, Plaintiff was called to a meeting,

where she was told that Dr. Dar had decided not to renew her collaborative practice agreement to work in Hem/Onc because she did not have the necessary OCN certification.  Dkt. No. 52 ¶ 61; Dkt. No. 55 ¶ 61.  Dr. Dar subsequently replaced Plaintiff with another NP in Hem/Onc by hiring Damien Reed, who is Jamaican and Black.  Dkt. No. 52 ¶ 100; Dkt. No. 55 ¶ 100.

Following the non-renewal of her contract, Plaintiff took a medical leave of absence beginning in October 2018.  Dkt. No. 52 ¶ 63; Dkt. No. 55 ¶ 63.  On November 13, 2018, Plaintiff submitted a complaint about Dr. Dar to Mount Sinai's Diversity and Inclusion Department.  Dkt. No. 52 ¶ 64; Dkt. No. 55 ¶ 64.  Plaintiff explained that after a year of "hard work but respectful treatment" in Hem/Onc, Dr. Dar became "extremely rude, dismissive, and disrespectful."  Dkt. No. 46-1 at Defs. Ex. 15.  She noted that she had complained to the Labor Relations Department in August 2018 "about the abusive and hostile work environment that at times jeopardized patient care" and asserted that "[a]s a result of my complaint I was unfairly retaliated against and forced out of my position by leadership in the Oncology / Hematology department."  Dkt. No. 46-1 at Defs. Ex. 15; *see also* Dkt. No. 52 ¶ 64; Dkt. No. 55 ¶ 64.

Plaintiff also applied for other NP positions at Mount Sinai while on medical leave, including an NP position at the Faculty Practice, a multispecialty group within the Mount Sinai system.  Dkt. No. 52 ¶¶ 66–67; Dkt. No. 55 ¶¶ 66–67.  As part of Plaintiff's application, Dr. Dar submitted two verifications to the Faculty Practice on her behalf, in which he rated Plaintiff favorably and stated that, though she lacked the experience necessary to fulfill the duties of an oncology provider, she was capable of practicing in a non-oncology setting.  Dkt. No. 52 ¶¶ 68–70; Dkt. No. 55 ¶¶ 68–70.  According to Plaintiff, one of the physicians in the Faculty Practice position—Dr. Naa-Abia Casely-Hayford—also later told Plaintiff that she spoke with Dr. Dar about Plaintiff's application.  Dkt. No. 46-1 at 52:20–53:3.  On November 18, 2018, Plaintiff

was offered the NP position in the Faculty Practice.  Dkt. No. 52 ¶ 67; Dkt. No. 55 ¶ 67.

Plaintiff accepted.  Dkt. No. 52 ¶ 67; Dkt. No. 55 ¶ 67.

Once Mount Sinai cleared Plaintiff to return to work in April 2019, she began her new

position at the Faculty Practice.  Dkt. No. 52 ¶¶ 71–72; Dkt. No. 55 ¶¶ 71–72.  In that role,

Plaintiff no longer interacted with Dr. Dar.  Dkt. No. 52 ¶ 73; Dkt. No. 55 ¶ 73.  Instead, she

worked with Dr. Mack, who was her collaborating physician, and Dr. Casely-Hayford—both of

whom are Black women over the age of forty.  Dkt. No. 52 ¶¶ 74–75, 101; Dkt. No. 55 ¶¶ 74–75,

101.  Plaintiff started employment subject to a three-month probationary period.  Dkt. No. 52

¶ 76; Dkt. No. 55 ¶ 76.  According to Dr. Mack, Plaintiff did not see patients every day during

her first month with the Faculty Practice, Dkt. No. 47 ¶ 2, but Mount Sinai ramped up Plaintiff's

responsibilities during her second month, as she began to see patients every day, with the

expectation that she would eventually see fourteen to sixteen patients per day, *id.* ¶¶ 3–4.

However, Dr. Mack believed that Plaintiff struggled to work independently and required

extensive oversight when she saw patients.  *Id.* ¶ 7.  Dr. Mack and Dr. Casley-Hayford met with

Plaintiff on June 27, 2019 to discuss her performance and responsibilities.  Dkt. No. 52 ¶¶ 83–

84; Dkt. No. 55 ¶¶ 83–84; Dkt. No. 53-1 at 220:2–8.

On July 11, 2019, Tameica McKenzie—a Practice Manager with the Faculty Practice—

lodged a formal complaint against Plaintiff with Dr. Mack.  Dkt. No. 52 ¶¶ 85, 87; Dkt. No. 55

¶¶ 85, 87.  McKenzie stated that Plaintiff was disrespectful, condescending, and dismissive

towards her and other Faculty Practice staff members.  Dkt. No. 52 ¶¶ 88, 91; Dkt. No. 55 ¶¶ 88,

91.  For example, McKenzie described how, after speaking with Plaintiff, one receptionist left in

tears.  Dkt. No. 52 ¶ 91; Dkt. No. 55 ¶ 91.  McKenzie also reported that Faculty Practice patients

had complained about Plaintiff, including one whose repeated bad experiences with Plaintiff had led the patient to change doctors.  Dkt. No. 52 ¶¶ 89–90; Dkt. No. 55 ¶¶ 89–90.

Four days later, Dr. Mack told Plaintiff that she had failed to meet Mount Sinai's professional expectations for her role and, as a result, her employment at the Faculty Practice would be terminated effective July 25, 2019.  Dkt. No. 52 ¶ 92; Dkt. No. 55 ¶ 92; *see* Dkt. No. 46-1 at Defs. Ex. 2.  Dr. Mack explained that Plaintiff had failed to close notes in a timely fashion, proven unable to deescalate patient issues, and shown poor interpersonal and communication skills as well as a lack of professionalism in her treatment of the Faculty Practice's staff.  Dkt. No. 52 ¶ 93; Dkt. No. 55 ¶ 93.

## PROCEDURAL HISTORY

Plaintiff filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 15, 2020.  Dkt. No. 52 ¶ 94; Dkt. No. 55 ¶ 94.  Plaintiff then initiated this lawsuit by filing a complaint against Mount Sinai on February 10, 2022.  Dkt. No. 1.  In her complaint, Plaintiff brought twenty-five causes of action, claiming that Mount Sinai engaged in discrimination on the basis of gender, sex, race, color, national origin, age, and disability, and retaliation under federal, state, and city law.[2]  *Id.* ¶¶ 89–292.  Mount Sinai answered the complaint on April 19, 2022.  Dkt. No. 11.

---

[2] Specifically, Plaintiff claims that Mount Sinai engaged in: (1) race discrimination under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*; (2) sex discrimination under the NYCHRL; (3) national origin discrimination under the NYCHRL; (4) age discrimination under the NYCHRL; (5) color discrimination under the NYCHRL; (6) disability discrimination under the NYCHRL; (7) retaliation under the NYCHRL; (8) race discrimination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; (9) sex discrimination under the NYSHRL; (10) national origin discrimination under the NYSHRL; (11) age discrimination under the NYSHRL; (12) color discrimination under the NYSHRL; (13) disability discrimination under the NYSHRL; (14) retaliation under the NYSHRL; (15) race discrimination under 42 U.S.C. § 1981; (16) retaliation under 42 U.S.C. § 1981; (17) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*; (18) sex discrimination under Title VII; (19) national origin

On August 4, 2023, the parties filed a joint letter informing the Court that "the parties have reached a settlement on all of Plaintiff's claims" and requesting a thirty-day conditional order of dismissal to give the parties time to finalize the settlement agreement.  Dkt. No. 27.  The Court entered the requested order on August 7, 2023, dismissing the case without prejudice to either party filing an application to retore the case within thirty days.  Dkt. No. 28.  On September 6, 2023, Plaintiff filed a motion to reopen the case, explaining that the parties were ultimately unable to reach a settlement agreement.  Dkt. No. 29.  The following day, the Court entered an order reopening this case and restoring all prior deadlines.  Dkt. No. 30.

Mount Sinai filed this motion for summary judgment on January 31, 2024, along with an accompanying memorandum of law, Local Rule 56.1 statement, and declarations from Rory McEvoy, Theresa Mack, Ann McNicholas, and Clarissa Jones-Winter.  Dkt. Nos. 45–52.  Plaintiff filed a memorandum of law in opposition to Mount Sinai's motion, as well as a Local Rule 56.1 statement and declaration of Supriya Kichloo on February 20, 2024.  Dkt. Nos. 53–55.  Mount Sinai submitted a reply memorandum, affirmation of Rory McEvoy, and declaration of Khalid Dar on March 1, 2024.  Dkt. Nos. 56–58.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n

---

discrimination under Title VII; (20) color discrimination under Title VII; (21) retaliation under Title VII; (22) age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; (23) disability discrimination under the Americans with Disabilities Act of 1990 as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*; (24) retaliation under the ADEA; and (25) retaliation under the ADA.

issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).  Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The non-moving party must also demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

In cases involving claims of discrimination or retaliation, "an extra measure of caution is merited in [granting] summary judgment . . . because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted) (quoting *Holtz*, 258 F.3d at 69); *see Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010).  However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).  "[T]rial courts should not 'treat discrimination differently from other ultimate questions of fact,'" *id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)), and even in the discrimination context, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

The Southern District's Local Civil Rule 56.1 sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented. Any party moving for summary judgment must "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a).  Local Rule 56.1(b), in turn, requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1(b).  All statements in a Local Rule 56.1 submission "must be followed by citation to evidence which

would be admissible." L.R. 56.1(d).  "Each numbered paragraph in the statement of material

facts set forth in the statement required to be served by the moving party will be deemed to be

admitted for purposes of the motion unless specifically controverted by a correspondingly

numbered paragraph in the statement required to be served by the opposing party." L.R. 56.1(c).

Such a corresponding paragraph cannot merely deny the movant's statement of material fact;

rather, it must cite to evidence which would be admissible. L.R. 56.1(d).  "[T]he trial court has

discretion to conduct an assiduous review of the record in an effort to weigh the propriety of

granting a summary judgment motion, [though] it is not required to consider what the parties fail

to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (citation

omitted).

## DISCUSSION

### I.   Disability-Based Claims

As an initial matter, Plaintiff has abandoned her claims for disability discrimination under

the NYCHRL, NYSHRL, and ADA and her claim for retaliation under the ADA.  In its motion

for summary judgment, Mount Sinai emphasized that "Plaintiff admitted at her deposition . . .

[that] she does not have a disability and does not believe that she was discriminated against

because of a disability." Dkt. No. 51 at 1 n.1.  Plaintiff's opposition does not respond to Mount

Sinai's argument.  Nor does Plaintiff offer any argumentation or evidence in support of her

disability-based discrimination and retaliation claims.  "[W]hen a counseled party moves for

summary judgment, 'a partial response [by the non-movant] arguing that summary judgment

should be denied as to some claims while not mentioning others may be deemed an abandonment

of the unmentioned claims.'" *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143

(2d Cir. 2016) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195–96 (2d Cir. 2014)); *see also*

*Ruggiero v. Cnty. of Orange*, 2023 WL 7005074, at *7 (S.D.N.Y. Oct. 24, 2023) ("Plaintiff has

failed to respond to the arguments advanced in Defendants' motion as to certain claims, and the Court therefore concludes that these claims have been abandoned."). Given Plaintiff's failure to respond to Mount Sinai's argument regarding her disability-based claims, "the court deems them abandoned and grants Defendants' motion as to those claims." *Silverman v. Household Fin. Realty Corp. of N.Y.*, 979 F. Supp. 2d 313, 317 (E.D.N.Y. 2013); *Lykins v. IMPCO Techs., Inc.*, 2018 WL 3231542, at *12 (S.D.N.Y. Mar. 6, 2018).

## II.    Timeliness Under Title VII and the ADEA

Mount Sinai contends that Plaintiff's discrimination and retaliation claims under Title VII and the ADEA based on her employment and subsequent non-renewal with Hem/Onc are untimely, due to Plaintiff's failure to file an EEOC complaint within 300 days of those allegedly unlawful acts. Dkt. No. 51 at 12–13; Dkt. No. 58 at 2–3.

"Both Title VII and the ADEA require that an employee alleging discrimination file a claim with the EEOC within 300 days of the discriminatory action." *Mitchell v. N.Y.C. Dep't of Educ.*, 2022 WL 621956, at *7 (S.D.N.Y. Mar. 3, 2022); *see* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2); *see also Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 n.1 (2d Cir. 2000). "A claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017); *see also Cabrera v. New York City*, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Bernstein v. N.Y.C. Dep't of Educ.*, 2020 WL 6564809, at *5 (S.D.N.Y. Nov. 9, 2020).

"An exception to the 300-day rule applies, however, if the discrimination constitutes a 'continuing violation.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023). The continuing violation doctrine applies to hostile work environment claims, such that "if 'an act contributing to the [hostile environment] occurs within the filing period,' the hostile work environment claim is timely, and a factfinder can hold a defendant liable for 'the entire time period of the hostile environment,' including the period falling outside of the limitations period." *King v. Aramark Servs. Inc.*, --- F.4th ----, 2024 WL 1188985, at *8 (2d Cir. Mar. 20, 2024) (alterations in original) (quoting *Morgan*, 536 U.S. at 117). "In determining whether the [continuing violation] exception applies, courts are required 'to make an individualized assessment of whether incidents and episodes are related,' such that they can be considered 'part of the same actionable hostile work environment practice.'" *Johnson v. City of New York*, 2019 WL 4468442, at *6 (E.D.N.Y. Sept. 18, 2019) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010)).

Plaintiff filed her EEOC complaint on May 15, 2020. Dkt. No. 52 ¶ 94; Dkt. No. 55 ¶ 94. Consequently, her "Title VII and ADEA claims are time-barred to the extent they are based on discrete discriminatory acts that took place more than 300 days before that date," i.e., before July 20, 2019. *Mitchell*, 2022 WL 621956, at *7. Plaintiff simply asserts that her Title VII and ADEA claims are timely because Mount Sinai terminated her employment with the Faculty Practice on July 25, 2019. Dkt. No. 54 at 7. But Mount Sinai's termination of Plaintiff's employment with the Faculty Practice was a distinct discrete act from the non-renewal of her contract with Hem/Onc. *See Morgan*, 536 U.S. at 114 ("Discrete acts such as termination . . . are easy to identify.").

The end of Plaintiff's employment with the Faculty Practice is also too "unrelated to [her] hostile work environment" claims for the continuing violation doctrine to apply. *Szuszkiewicz v. JPMorgan Chase Bank*, 12 F. Supp. 3d 330, 339 (E.D.N.Y. 2014).  Plaintiff's hostile work environment theory rests entirely on Dr. Dar's behavior towards her and Bressler and McNicholas's responses to his misconduct while she worked in Hem/Onc.  *See* Dkt. No. 54 at 14–17.  Accordingly, the termination of her employment in a different position, with a different Mount Sinai facility and practice, under the supervision of different physicians was manifestly unrelated to the hostile work environment she claims to have experienced in Hem/Onc several months prior.  *See Bright v. Coca Cola Refreshments USA, Inc.*, 2014 WL 5587349, at *4 (E.D.N.Y. Nov. 3, 2014), ("Incidents that involve different perpetrators, actions, . . . or are temporally distant from one another, may be insufficiently related.") *aff'd*, 639 F. App'x 6 (2d Cir. 2015); *see also Skelcher v. Dep't of Correction*, 2021 WL 5281537, at *10 (D. Conn. Nov. 12, 2021).

Thus, notwithstanding Plaintiff's filing of her EEOC complaint within three hundred days of Mount Sinai's termination of her employment with the Faculty Practice, Plaintiff's Title VII and ADEA claims are untimely to the extent they depend on her employment or non-renewal with Hem/Onc.

### III.    Discrete-Act Discrimination

Next, Mount Sinai moves for summary judgment on Plaintiff's claims that Mount Sinai discriminated against her on the basis of gender, sex, race, color, national origin, and age by declining to renew her contract with Hem/Onc and by terminating her employment with the Faculty Practice.  *See* Dkt. No. 51 at 20–21.  Plaintiff retorts that she has established triable issues as to whether those adverse actions were animated by unlawful animus.  *See* Dkt. No. 54 at 13–14.

Plaintiff's discrimination claims arise under several statutes.  Title VII prohibits an employer from discriminating against any individual "because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  By contrast, the ADEA and Section 1981 are more limited, as they proscribe only age- and race-based discrimination respectively.  29 U.S.C. § 623(a)(1); 42 U.S.C. § 1981(a).  The NYSHRL proscribes employment discrimination "because of an individual's age, race, . . . color, national origin, . . . [or] sex," N.Y. Exec. Law § 296(1)(a), while the NYCHRL forbids employment discrimination "because of [a person's] actual or perceived age, race, . . . color, national origin, [or] gender," N.Y.C. Admin. Code § 8-107(1)(a).

To establish a prima facie case of discrimination under the *McDonnell Douglas* framework that governs claims under Title VII, the NYSHRL, the ADEA, and Section 1981, "a plaintiff must demonstrate that he is a member of a protected class, that he was qualified for his job, that he suffered an adverse employment action, and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  *Cano v. SEIU Loc. 32BJ*, 2021 WL 4927166, at *7 (S.D.N.Y. June 15, 2021), *report and recommendation adopted*, 2021 WL 4480274 (S.D.N.Y. Sept. 30, 2021).  "This initial prima facie burden has been characterized as 'minimal' or '*de minimis.*'"  *Venezia v. Luxoticca Retail N. Am. Inc.*, 2015 WL 5692146, at *3 (S.D.N.Y. Sept. 28, 2015) (Sullivan, J.) (quoting *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005)), *aff'd*, 699 F. App'x 53 (2d Cir. 2017).  If the plaintiff establishes a prima facie case, then the burden "shifts to Defendants to rebut the presumption of discrimination or retaliation by articulating a legitimate, non-discriminatory reason for their employment decision."  *Samaan v. City of New York*, 2023 WL 2499263, at *12 (S.D.N.Y. Mar. 14, 2023).  "Provided the employer articulates such a reason, the burden shifts back to the

plaintiff to show that the adverse employment was motivated by discriminatory animus in the case of Title VII and the NYSHRL or was 'because of' the Plaintiff's age under the ADEA or because of his race under Section 1981." *Cano*, 2021 WL 4927166, at *7 (S.D.N.Y. June 15, 2021). "[W]hile a plaintiff *may* satisfy the third-stage burden under *McDonnell Douglas* by showing that the employer's stated reason was false and just a pretext, or cover, for a discriminatory intent, a plaintiff is not *required* to demonstrate the falsity of the employer's proffered reason." *Bart v. Golub Corp.*, --- F.4th ----, 2024 WL 1281069, at *4 (2d Cir. Mar. 26, 2024) (emphasis in original). Rather, a plaintiff can also "prevail by proving that an impermissible factor was a *motivating factor*, without proving that the employer's proffered explanation was not some part of the employer's motivation." *Id.* (emphasis in original) (quoting *Fields v. N.Y. State Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997)).

"NYCHRL claims are owed an 'independent liberal construction' and are therefore evaluated separately from the above." *Massie v. Metro. Museum of Art*, 2015 WL 3833839, at *6 (S.D.N.Y. June 22, 2015) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). Under the NYCHRL, "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that discrimination play[ed] no role in its actions." *Heiden v. N.Y.C. Health & Hosps. Corp.*, 2023 WL 171888, at *15 (S.D.N.Y. Jan. 11, 2023) (alteration in original) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013)); *see also Rowe v. Google LLC*, 2022 WL 4467194, at *5 (S.D.N.Y. Sept. 26, 2022) ("Summary judgment is

appropriate only if 'no jury could find defendant liable under any of the evidentiary routes—*McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof.'" (quoting *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 121 (1st Dep't 2011))).

Because Plaintiff avers that Mount Sinai committed two discrete discriminatory acts—declining to renew her Hem/Onc contract and terminating her employment with the Faculty Practice—the Court addresses each in turn.

### A.    Hem/Onc Non-Renewal[3]

Plaintiff has established a prima facie case that the non-renewal of her contract with Hem/Onc constituted unlawful discrimination based on her sex, race, color, national origin, and age.  Mount Sinai does not dispute that Plaintiff is a member of those protected classes, that she was qualified for her NP position at Hem/Onc, and that she suffered an adverse action when Mount Sinai declined to renew her employment contract.  *See* Dkt. No. 51 at 13–20.  Instead, Mount Sinai argues that Plaintiff has not shown circumstances giving rise to an inference of discrimination.  *Id.*  "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in . . . degrading terms [related to a protected class]; or its invidious comments about others in the employee's protected group; . . . or the sequence of events leading" up to the adverse action.  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (internal quotation marks omitted); *see also Morales v. Bottling Grp., LLC*, 374 F. Supp. 3d 257, 269 (W.D.N.Y. 2019), *aff'd sub nom. Campbell v. Bottling Grp., LLC*, 814 F. App'x 630 (2d Cir. 2020); *Szewczyk v. City of New York*, 2016 WL 3920216, at *5 (E.D.N.Y. July 14, 2016).

---

[3] As explained *supra*, Mount Sinai is entitled to summary judgment on Plaintiff's Title VII and ADEA discrimination claims based on the non-renewal of her contract with Hem/Onc, because those claims are untimely.  Thus, this Section addresses her discrimination claims under Section 1981, the NYSHRL, and the NYCHRL.

Plaintiff has submitted evidence of remarks by Dr. Dar that, if credited by a jury, give rise to an inference of discriminatory intent. Dr. Dar made numerous inappropriate comments about Plaintiff's sex. When Plaintiff asked him not to grab her computer mouse and invade her personal space, Dr. Dar told Plaintiff to "shut up" and asked her "if [she] was on [her] period." Dkt. No. 53-1 at 162:14–20. He also insinuated she was promiscuous by asking whether a security guard was one of her men. *Id.* at 26:9–12. And on multiple occasions, Dr. Dar stated outright that he believed African American women are promiscuous. *Id.* at 28:3–19. Those comments similarly evinced Dr. Dar's discriminatory animus towards Plaintiff based on her race and color. As for her national origin, Dr. Dar stereotyped Jamaicans by stating that all they do is smoke marijuana and drink rum, *id.* at 30:24–31:6, 33:17–22, and imitated Plaintiff's accent more than ten times, *id.* at 31:7–11, 31:29–25, 33:4–15. Finally, Dr. Dar demonstrated hostility towards Plaintiff based on her age by repeatedly threatening to replace her with a younger employee. *Id.* at 35:3–12, 35:22.

According to Mount Sinai, Dr. Dar's offensive comments cannot give rise to an inference of discrimination because they are stray remarks. Dkt. No. 51 at 16–20. To assess whether a remark is probative of discriminatory intent, courts in the Second Circuit consider four factors:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *see also Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 637 (S.D.N.Y. 2005) (Chin, J.). On balance, these factors indicate that Dr. Dar's comments were not stray. First, Dr. Dar was Plaintiff's collaborating physician. He played an important role in hiring Plaintiff and she was told that he was responsible for the decision not to renew her contract with Hem/Onc. *See Adeniji v. Harman*

*Firm, LLP*, 2022 WL 254939, at *6 (S.D.N.Y. Jan. 27, 2022).  Second, Dr. Dar made those remarks throughout 2018, leading up to Mount Sinai's non-renewal of Plaintiff's contract with Hem/Onc in September of that year.  *See Sciola v. Quattro Piu, Inc.*, 361 F. Supp. 2d 61, 68 (E.D.N.Y. 2005); *Weisenbach v. LQ Mgmt.*, 2015 WL 5680322, at *11 (D. Conn. Sept. 25, 2015).  Third, the content of Dr. Dar's remarks were highly offensive and showed a clear bias against individuals with Plaintiff's protected characteristics.  *See Sandler v. Montefiore Health Sys., Inc.*, 2018 WL 4636835, at *8 (S.D.N.Y. Sept. 27, 2018).  Finally, though the remarks were not made in the context of the decision-making process that led to the non-renewal of Plaintiff's contract, this single factor is not dispositive.  *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019); *Rolon v. Pep Boys—Manny, Moe & Jack*, 601 F. Supp. 2d 464, 468–69 (D. Conn. 2009).  Balancing these factors reveals that Dr. Dar's comments were not insignificant stray remarks, but rather "open declaration[s] of bias."  *Martinez v. N.Y.C. Transit Auth.*, 672 F. App'x 68, 71 (2d Cir. 2016) (summary order).  Consequently, the Court concludes that Dr. Dar's statements suffice to establish an inference of discriminatory intent for purposes of Plaintiff's "minimal burden at the prima facie stage."  *Lenzi*, 944 F.3d at 113.

However, Mount Sinai has met its burden of proffering a legitimate, non-discriminatory reason for its decision not to renew Plaintiff's employment in Hem/Onc.  *See* Dkt. No. 51 at 20. It is undisputed that Bressler learned that Plaintiff lacked the ONS provider card and OCN certifications necessary to work in Hem/Onc and became concerned given Plaintiff's responsibilities for providing care to Hem/Onc's vulnerable patients.  Dkt. No. 52 ¶¶ 24–25, 28; Dkt. No. 55 ¶¶ 24–25, 28.  Nor does Plaintiff dispute that Bressler and Vezina subsequently determined that Plaintiff could not continue working as an NP in Hem/Onc "in the interest of patient care and safety."  Dkt. No. 52 ¶ 58; Dkt. No. 55 ¶ 58.  When Mount Sinai notified

Plaintiff that it would not renew her employment with Hem/Onc, Mount Sinai specifically cited her lack of OCN certification.  Dkt. No. 52 ¶ 61; Dkt. No. 55 ¶ 61.  Accordingly, Mount Sinai has "introduced evidence that, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason'" for non-renewal.  *Holcomb*, 521 F.3d at 141 (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  And "it is not the Court's task at this stage . . . to determine whether the defendant[s'] explanation of [their] actions is convincing."  *Phillips v. Dow Jones & Co.*, 2009 WL 2568437, at *12 (S.D.N.Y. Aug. 17, 2009). Mount Sinai's clinical concerns constitute legitimate, nondiscriminatory reasons for its non-renewal of Plaintiff's contract, thereby satisfying Mount Sinai's burden at the second of the *McDonnell Douglas* framework.  *See Hayt v. N.Y. Hosp.*, 2000 WL 675347, at *3 (S.D.N.Y. May 23, 2000); *see also Richard v. N.Y.C. Dep't of Educ.*, 2022 WL 4280561, at *37 (E.D.N.Y. Sept. 15, 2022) (concluding defendant articulated a legitimate, nonretaliatory reason for adverse action based on evidence that "Plaintiff lacked the necessary credentials").

Yet Plaintiff has established a triable issue with respect to the final step of the *McDonnell Douglas* analysis—namely, whether the non-renewal of her contract with Hem/Onc was motivated by or the result of discriminatory animus.  Plaintiff has identified "weaknesses, implausibilities, inconsistencies, or contradictions in [Mont Sinai's] proffered legitimate, nonretaliatory reasons for its action.  From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason."  *Benussi v. UBS Fin. Servs. Inc.*, 2014 WL 558984, at *10 (S.D.N.Y. Feb. 13, 2014) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846–47 (2d Cir. 2013)).  The undisputed facts establish that after Bressler discovered Plaintiff's lack of necessary oncology credentials, Plaintiff agreed she would secure her OCN certification by December 2018.  Dkt. No. 52 ¶¶ 25, 28–32; Dkt. No. 55 ¶¶ 25, 28–32.

24

Construing the facts in Plaintiff's favor, Bressler and deVries ratified that deadline by reminding Plaintiff of it during a June 25, 2018 meeting.  Dkt. No. 52 ¶¶ 33–34; Dkt. No. 55 ¶¶ 33–34.  But when Mount Sinai declined to renew Plaintiff's Hem/Onc contract in September 2018, it cited her lack of OCN certification, Dkt. No. 52 ¶ 61; Dkt. No. 55 ¶ 61, even though Plaintiff still had three months left to acquire that certification.  To account for that discrepancy, Mount Sinai emphasizes that "the decision not to renew Plaintiff's collaborative practice agreement was based on her lack of *progress* towards receiving the qualifications, not the fact that the deadline for obtaining them had already *passed*."  Dkt. No. 58 at 6 (emphasis added); *see also* Dkt. No. 50 ¶ 16.  That distinction hardly resolves the tension in Mount Sinai's position:  If there were discrete milestones Plaintiff needed to achieve in pursuing her OCN certification, one would expect Mount Sinai to have included them in Plaintiff's goals.  Without those milestones—or indeed any clarification of the kind of progress Mount Sinai felt Plaintiff had not made—Mount Sinai's nondiscriminatory rationale for non-renewal is so vague and contrary to Plaintiff's prior goal that a reasonable factfinder could find it pretextual.  *See Johnson v. Rockland Cnty. BOCES*, 2022 WL 4538452, at *16 (S.D.N.Y. Sept. 28, 2022) ("[T]he Court finds that such vagueness contributes to the inference of discrimination.").  Bressler and Vezina's even broader rationale that "patient care and safety" required non-renewal fares no better, Dkt. No. 52 ¶ 60; Dkt. No. 55 ¶ 60, as "medical employers cannot shield their employment decisions from scrutiny by waiving the magic words 'patient care and safety' and demanding that the Court—and, subsequently, a jury—take them at their word."  *Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, 2022 WL 4456273, at *12 (W.D. Tex. Sept. 23, 2022).

Although "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may [independently] permit the trier of fact to

conclude that the employer unlawfully discriminated," *Reeves*, 530 U.S. at 148, Plaintiff has also adduced evidence that the non-renewal of her contract was the product of discrimination.  It is undisputed that when Mount Sinai informed Plaintiff that it would not renew her contract with Hem/Onc, Plaintiff was told that Dr. Dar had made that decision.  Dkt. No. 52 ¶ 61; Dkt. No. 55 ¶ 61.  As explained above, Dr. Dar's inappropriate remarks revealed animus against individuals with Plaintiff's protected characteristics.  At his deposition, Dr. Dar denied that he had made the decision not to renew Plaintiff's contract.  Dkt. No. 53-2 at 33:2–21.  That inconsistency not only further undermines Mount Sinai's stated reason for non-renewal, but also raises a genuine dispute of material fact as to Dr. Dar's influence over the non-renewal process.  Given Dr. Dar's instrumental role in recommending that Mount Sinai hire Plaintiff as an NP in Hem/Onc and the inconsistent characterizations of his responsibility for the non-renewal decision, a jury could reasonably infer that Dr. Dar at least exerted significant influence over that adverse employment action.  That reasonable inference supports the conclusion that Mount Sinai's non-renewal decision was the product of discriminatory animus.  *See Hajem v. City of New York*, 2010 WL 11701214, at *3 (S.D.N.Y. Jan. 29, 2010) (Sullivan, J.); *Constance v. Pepsi Bottling Co. of NY*, 2007 WL 2460688, at *23 (E.D.N.Y. Aug. 24, 2007); *Weber v. Parfums Givenchy, Inc.*, 49 F. Supp. 2d 343, 361 (S.D.N.Y. 1999).

Mount Sinai retorts that three factors tend to undermine the inference that the non-renewal of Plaintiff's contract with Hem/Onc was the result of discrimination, but these three considerations are not so compelling as to preclude a reasonable jury from finding in Plaintiff's favor.  First, Mount Sinai observes that Dr. Dar interviewed Plaintiff in person, so he knew Plaintiff was an African American woman from Jamaica over the age of forty when he recommended her for the NP position in Hem/Onc.  Dkt. No. 51 at 14–15.  Mount Sinai is

correct that "when the person who made the decision to fire was the same person who made the decision to hire, especially when the firing occurred only a short time after the hiring, it is difficult to impute to him an invidious firing motivation that would be inconsistent with his decision to hire." *Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 386 (S.D.N.Y. 2009) (quoting *Jetter v. Knothe Corp.*, 324 F.3d 73, 76 (2d Cir. 2003)).  Accordingly, Mount Sinai's argument rests on the premise that Dr. Dar indeed made the decision not to renew Plaintiff's contract with Hem/Onc.  *See* Dkt. No. 51 at 14.  Yet courts have held that a decisionmaker's awareness of an employee's characteristics upon hiring "is not dispositive, however, when the decisionmaker makes comments demonstrating discriminatory animus." *Varno v. Jefferson Cnty. Dep't of Plan.*, 2015 WL 5602965, at *6 (N.D.N.Y. Sept. 23, 2015) (collecting cases), *aff'd sub nom. Varno v. Canfield*, 664 F. App'x 63 (2d Cir. 2016).  Similarly, it "is generally not a sufficient basis to grant summary judgement for the employer, at least when the employee has proffered evidence of pretext." *Osekavage v. Sam's E., Inc.*, 619 F. Supp. 3d 379, 393 (S.D.N.Y. 2022) (quoting *Villetti v. Guidepoint Glob., LLC*, 2021 WL 3550220, at *3 (S.D.N.Y. Aug. 11, 2021)); *see also Hanley v. N.Y.C. Health & Hosps. Corp.*, 2024 WL 1221874, at *5 (E.D.N.Y. Mar. 22, 2024).  As Plaintiff has adduced evidence that Dr. Dar made discriminatory remarks and that Mount Sinai's nondiscriminatory reason for nonrenewal was pretextual, Dr. Dar's role in hiring Plaintiff and declining to renew her contract with Hem/Onc does not entitle Mount Sinai to summary judgment.

Second, Mount Sinai argues that Plaintiff cannot establish age discrimination because Dr. Dar is also over the age of forty.  Dkt. No. 51 at 15.  While courts have generally determined that "a member of a protected class is less likely to discriminate against another member of that protected class . . . , the Supreme Court and the Second Circuit have each held that such evidence

does not create a conclusive presumption or eliminate the existence of an inference of discrimination." *Dickinson v. City Univ. of N.Y.*, 2018 WL 4333986, at *13 (S.D.N.Y. Sept. 11, 2018) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) and *Feingold v. New York*, 366 F.3d 138, 155 (2d Cir. 2004)). As a matter of logic and experience alike, "[t]he proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable." *Laufer v. Pryor Cashman, LLP*, 2019 WL 1434569, at *10 (S.D.N.Y. Mar. 29, 2019) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir. 1998)). The fact that Dr. Dar is older than Plaintiff is therefore not fatal to a finding of age discrimination here.

Third, Mount Sinai argues that Plaintiff's race, color, and national origin discrimination claims are untenable because the NP who replaced Plaintiff in Hem/Onc is a Black, Jamaican man. Dkt. No. 51 at 15. Courts have held that an employer is less likely to have engaged in discrimination "where the individual hired to replace a plaintiff alleging discrimination is within the same protected class." *Meyer v. State of N.Y. Off. of Mental Health*, 174 F. Supp. 3d 673, 688 (E.D.N.Y. 2016), *aff'd*, 679 F. App'x 89 (2d Cir. 2017). But they have also emphasized that a replacement's characteristics are "not dispositive." *Id.* Given Dr. Dar's biased remarks regarding African Americans and Jamaican people, the Court concludes that "[w]ho took Plaintiff's [NP] position is not sufficiently probative to negate the inference that [Mount Sinai] was motivated by discriminatory animus" when it decided not to renew Plaintiff's contract with Hem/Onc. *Dickinson*, 2018 WL 4333986, at *13.

In sum, the considerations Mount Sinai identifies may prove to be convincing jury arguments, but they are not so conclusive that no reasonable jury could credit Plaintiff's contrary evidence of pretext and discrimination. Plaintiff has therefore raised a triable issue as to whether

Mount Sinai's non-renewal of her contract with Hem/Onc constituted discrimination on the basis of sex, race, color, national origin, and age under the NYSHRL and race under Section 1981.

Because Mount Sinai has not demonstrated its entitlement to summary judgment on Plaintiff's NYSHRL claims for sex, race, color, national origin, and age discrimination based on the non-renewal of her contract with Hem/Onc, it follows a fortiori that summary judgment is also unwarranted on Plaintiff's discrimination claims under the more forgiving standards of the NYCHRL based on that same adverse action. *See Carmody v. N.Y. Univ.*, 2023 WL 5803432, at *6 (S.D.N.Y. Sept. 7, 2023); *de Souza v. Planned Parenthood Fed'n of Am., Inc.*, 2023 WL 2691458, at *11 (S.D.N.Y. Mar. 29, 2023).  Accordingly, those claims may proceed to trial.

### B.       Faculty Practice Termination

Mount Sinai also seeks summary judgment on Plaintiff's discrimination claims under Title VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL predicated on the termination of her employment with Mount Sinai's Faculty Practice. *See* Dkt. No. 51 at 20. Plaintiff opposes Mount Sinai's motion for summary judgment on these claims in a single paragraph, asserting that Dr. Casely-Hayford spoke to Dr. Dar and that Plaintiff disputes the occurrence of a meeting on June 28, 2019 in which Dr. Mack warned Plaintiff about her tardiness.  Dkt. No. 54 at 14.

Plaintiff has not met her prima facie burden on these discrimination claims, because she has not adduced evidence that the circumstances surrounding the termination of her employment with the Faculty Practice give "rise to an inference of discrimination." *Cano*, 2021 WL 4927166, at *7.  It is undisputed that once Plaintiff began her position as an NP in the Faculty Practice, Dr. Dar ceased to play any role in her employment.  Dkt. No. 52 ¶ 73; Dkt. No. 55 ¶ 73. Instead, Plaintiff began to work with Drs. Mack and Casely-Hayford.  Dkt. No. 52 ¶¶ 74–75; Dkt. No. 55 ¶¶ 74–75.  In contrast to Plaintiff's testimony regarding Dr. Dar's many biased

remarks, Plaintiff has not offered any evidence that Dr. Mack, Dr. Casely-Hayford, or anyone else in the Faculty Practice exhibited bias towards individuals of her gender, sex, race, color, national origin, or age. *See Witek v. City of New York*, 807 F. App'x 52, 54 (2d Cir. 2020) (summary order).

Instead, Plaintiff avers that Dr. Casely-Hayford spoke to Dr. Dar during Plaintiff's application process for the NP position at the Faculty Practice, Dkt. No. 54 at 14, and highlights her testimony that she overheard Dr. Mack tell a nurse in the Faculty Practice that "[w]hat they were saying about her in the other department must have been true," Dkt. No. 53-1 at 232:8–10; *see* Dkt. No. 54 at 5.  Neither establishes an inference of discrimination.  To the contrary, the fact that Mount Sinai hired Plaintiff to work in the Faculty Practice *after* Dr. Dar spoke with Dr. Casely-Hayford undermines the inference that Dr. Dar communicated discriminatory animus to Dr. Casely-Hayford that affected the decision to terminate Plaintiff's employment several months later.  *See Hernandez v. Kwiat Eye & Laser Surgery, PLLC*, 2023 WL 372105, at *7 (N.D.N.Y. Jan. 24, 2023).  And Dr. Mack's statement that the rumors about Plaintiff from another department were true provides no support for Plaintiff's discrimination claims, as it is far "too 'isolated and ambiguous' to create an inference of discrimination." *Pasha v. William M. Mercer Inv. Consulting, Inc.*, 135 F. App'x 489, 490 (2d Cir. 2005) (summary order); *see also Porter v. Port Auth. of N.Y. & N.J.*, 2022 WL 991978, at *9 (E.D.N.Y. Mar. 31, 2022) ("A single remark that is 'vague' and 'susceptible to any number of benign meanings,' is not adequate to establish a prima facie case of prohibited discrimination." (quoting *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 585 (S.D.N.Y. 2008))).  Thus, Plaintiff has adduced evidence that Dr. Dar exhibited bias against individuals with Plaintiff's protected characteristics, but she has failed to provide any support for the conclusion that Dr. Dar's animus played a role in the termination of

her employment at the Faculty Practice. *See Witek*, 807 F. App'x at 54 ("A jury could believe

. . . Lutchman harbored discriminatory animus towards Witek, but even then, Witek would lack

evidence connecting that animus to the decision to suspend or fire her, because Lutchman was

not involved in those decisions.").

Even if Plaintiff had established her prima facie case, Mount Sinai has articulated a

legitimate, nondiscriminatory reason for its decision to terminate Plaintiff's employment with the

Faculty Practice. Plaintiff was on probation throughout the entirety of her tenure at the Faculty

Practice. Dkt. No. 52 ¶ 76; Dkt. No. 55 ¶ 76. Plaintiff does not dispute that McKenzie lodged a

formal complaint against Plaintiff on July 11, 2019 for being dismissive and disrespectful

towards McKenzie and making another member of the Faculty Practice staff cry. Dkt. No. 52

¶¶ 87–91; Dkt. No. 55 ¶¶ 87–91. Four days later, Dr. Mack told Plaintiff that her employment

would be terminated effective July 25, 2019 (i.e., within the probationary period) due to, *inter

alia*, her lack of interpersonal and communication skills and professionalism, as evident in her

interactions with the Faculty Practice's staff. Dkt. No. 52 ¶¶ 92–93; Dkt. No. 55 ¶¶ 92–93; Dkt.

No. 46-1 at Defs. Ex. 2. Plaintiff's mistreatment of her coworkers is a legitimate,

nondiscriminatory reason for Mount Sinai's decision to terminate her employment at the Faculty

Practice. *See Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 261 (S.D.N.Y. 2000)

("[Plaintiff] caused several problems for her co-workers . . . and was perceived as being 'very

rude.' Taken together, this evidence constitutes a legitimate non-discriminatory reason to

terminate a three month probationary employee."); *see also Meiri*, 759 F.2d at 997; *Boyce-

Herbert v. N.Y. & Presbyterian Hosp.*, 2020 WL 376788, at *6 (E.D.N.Y. Jan. 23, 2020); *Hester

v. Rich*, 2004 WL 2049271, at *2 (S.D.N.Y. Sept. 13, 2004) (Chin, J.). Tellingly, "[w]hen asked

[at her deposition] whether she thought Mack's decision that she did not pass probation had

anything to do with her race, gender, age, or national origin, Plaintiff responded, 'I don't know.'"
Dkt. No. 52 ¶ 103; Dkt. No. 55 ¶ 103.

Nor has Plaintiff offered any evidence that Mount Sinai's nondiscriminatory reason for terminating her employment with the Faculty Practice was pretextual or that discrimination influenced the decision to terminate her employment there.  Plaintiff states that she did not meet with Dr. Mack on June 28, 2019 to discuss the issue of her tardiness.  Dkt. No. 54 at 14.  But, even crediting Plaintiff's assertion, her argument misses the mark because it does not undermine Mount Sinai's "separate, independent reason" for terminating her employment—namely, her poor interpersonal skills and mistreatment of Faculty Practice staff.  *Green v. Gen. Motors*, 2023 WL 3541265, at *6 n.7 (W.D.N.Y. May 18, 2023); *see also Reeves*, 530 U.S. at 148.  While Plaintiff is not required to establish pretext, she has not offered any other evidence that "an impermissible factor" influenced the decision to fire her.  *Bart*, 2024 WL 1281069, at *4 (quoting *Fields*, 115 F.3d at 120).  Consequently, her discrimination claims under Title VII, the ADEA, Section 1981, and the NYSHRL regarding Mount Sinai's termination of her employment with the Faculty Practice cannot withstand summary judgment.

Plaintiff's NYCHRL discrimination claims based on the termination of her position at the Faculty Practice likewise fail.  As explained above, courts apply "more forgiving standards" to discrimination claims under the NYCHRL.  *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 69 (S.D.N.Y. 2016).  However, "[s]imply stating that the NYCHRL encompasses a broader standard does not absolve [Plaintiff] from putting forth evidence" to support her discrimination claims, *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 862 (S.D.N.Y. 2013), because even under the NYCHRL "a defendant is not liable if the plaintiff fails to prove the [challenged] conduct is caused at least in part by discriminatory . . . motives," *Vasquez v. New York City*

*Dep't of Educ.*, 667 F. App'x 326, 328 (2d Cir. 2016) (quoting *Mihalik*, 715 F.3d at 109).  Yet

Plaintiff has failed to do so for the termination of her employment with the Faculty Practice.  She

has not put forward any evidence that Dr. Dar's animus played a role in that decision.  *See*

*Silverman v. City of New York*, 216 F. Supp. 2d 108, 118 (E.D.N.Y. 2002) (concluding the

animus of defendants who "did not participate in the decision to suspend [plaintiff], cannot be

imputed to the remaining defendants" under the NYCHRL), *aff'd*, 64 F. App'x 799 (2d Cir.

2003); *see also Gueye v. People's United Bank, Nat'l Ass'n*, 2021 WL 10351980, at *8

(E.D.N.Y. Apr. 9, 2021), *aff'd*, 2022 WL 2203953 (2d Cir. June 21, 2022).  Dr. Mack's "vague"

remark that the rumors about Plaintiff from the other department were true does not suggest any

bias against Plaintiff's protected characteristics and is therefore insufficient for a reasonable jury

to find that Dr. Mack "evinced discriminatory intent."  *Ya-Chen Chen v. City Univ. of N.Y.*, 805

F.3d 59, 74, 76 (2d Cir. 2015).  As a result, Mount Sinai is also entitled to summary judgment on

Plaintiff's NYCHRL claims predicated on Mount Sinai's termination of her employment with

the Faculty Practice.

## IV.    Hostile Work Environment

Mount Sinai moves for summary judgment on Plaintiff's hostile work environment

claims as well, arguing her alleged mistreatment was insufficient as a matter of law.[4]  Dkt. No.

51 at 21.  Plaintiff counters that Dr. Dar's behavior created a hostile work environment during

her tenure in Hem/Onc.[5]  Dkt. No. 54 at 14–17.  As explained above, Plaintiff's Title VII and

---

[4] Mount Sinai does not challenge, however, whether Plaintiff's alleged mistreatment is attributable to it.

[5] Plaintiff does not argue that she experienced a hostile work environment in the Faculty Practice.  *See* Dkt. No. 54 at 14–17.  Nor could she, as she "has failed to provide any evidence that could support a finding that [s]he was subject to a hostile work environment [at the Faculty Practice], let alone that [s]he was subject to a hostile work environment on account of" any of her protected characteristics.  *Johnson v. City of New York*, 2012 WL 1076008, at *6 (S.D.N.Y. Mar. 28, 2012) (Sullivan, J.).

ADEA claims regarding her employment at Hem/Onc are untimely.  Accordingly, the Court addresses Plaintiff's remaining hostile work environment claims under Section 1981, the NYSHRL, and the NYCHRL.

Except for Section 1981's requirement that the work environment be hostile on the basis of race, *see Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 234 n.3 (E.D.N.Y. 2014), "[h]ostile work environment claims under the NYSHRL are analytically identical to such claims under § 1981," *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 256 (E.D.N.Y. 2016); *see Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014).  "To establish a hostile work environment claim under Sections 1981 . . . and the NYSHRL, a plaintiff must first produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'"  *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 68 (2d Cir. 2023) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (Sotomayor, J.)).  "A hostile work environment is shown when 'a single incident was extraordinarily severe, or . . . a series of incidents were sufficiently continuous and concerted' to be deemed 'pervasive.'"  *Id.* at 69 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  "That analysis includes both an objective and a subjective component: '[a] work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it.'"  *Id.* (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)).  "Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance.'"  *Fox v. Costco Wholesale Corp.*, 918 F.3d

65, 74 (2d Cir. 2019) (alterations in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

"A plaintiff alleging a hostile work environment has a lower burden under city law than under its federal or state counterparts." *Williams*, 61 F.4th at 69. "In order to succeed on a NYCHRL hostile work environment claim, a plaintiff must show that he was treated 'less well than other employees' on the basis of a protected characteristic." *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. 2017) (summary order) (quoting *Mihalik*, 715 F.3d at 110). "Thus, at a minimum, a plaintiff must 'plead facts tending to show that actions that created the hostile work environment were taken against him *because of* a prohibited factor.'" *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (emphasis in original) (quoting *Williams v. Metro-N. Commuter R.R. Co.*, 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012)).

Plaintiff has established a triable issue as to whether Dr. Dar's inappropriate behavior towards her created a hostile work environment for purposes of Section 1981 and the NYSHRL. According to Plaintiff's deposition testimony, Dr. Dar repeatedly made racist and sexist comments expressing his view that African American women are sexually promiscuous. Dkt. No. 53-1 at 28:3–19. He connected that invidious generalization to Plaintiff specifically by asking her multiple times whether a security guard for the Hem/Onc facility was one of her men. *Id.* at 26:9–12. Dr. Dar also stereotyped Jamaicans by stating that all they do is smoke marijuana and drink rum, *id.* at 30:24–31:6, 33:17–22, and he ridiculed Plaintiff's Jamaican accent by imitating her manner of speech on more than ten separate occasions, *id.* at 31:7–11, 31:29–25, 33:4–15. Dr. Dar humiliated Plaintiff by asking her whether she was on her period when she told him that he had invaded her personal space by grabbing a computer mouse from her. *Id.* at

162:14–20. And he insulted Plaintiff's age twice by snapping his fingers at her and threatening

to replace her with someone younger if she did not hurry in her work. *Id.* at 35:3–12, 35:22.

A reasonable jury could find that this stream of "unambiguous[ly]" biased comments

from Plaintiff's collaborating physician was sufficiently pervasive to alter the terms and

conditions of her employment in Hem/Onc. *Sherman v. Fivesky, LLC*, 2020 WL 2136227, at

*13 (S.D.N.Y. May 5, 2020). These comments occurred over the course of several months. *See*

*Fox*, 918 F.3d at 75; *Brito v. Marina's Bakery Corp.*, 2022 WL 875099, at *13–14 (E.D.N.Y.

Mar. 24, 2022). And they humiliated and insulted Plaintiff. *See Edrisse v. Marriott Int'l, Inc.*,

757 F. Supp. 2d 381, 387 (S.D.N.Y. 2010). Even considering Dr. Dar's racially bigoted

statements in isolation for purposes of Section 1981, his open expressions of harmful stereotypes

and his remarks directly tying those generalization to Plaintiff as an individual were so repeated

and degrading as to constitute the kind of "opprobrious racial comments" that can create a hostile

work environment. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quoting *Bolden*

*v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)); *see also Oliver v. City of New York*, 2023 WL

2160062, at *11 (S.D.N.Y. Feb. 22, 2023) (ruling that repeated expressions of unfounded

concerns based on racist stereotypes supported a hostile work environment claim); *Ward v.*

*Shaddock*, 2016 WL 4371752, at *7 (S.D.N.Y. Aug. 11, 2016) (regular expressions of contempt

for African Americans and racist jokes sufficed to state a hostile work environment claim);

*Nwokoro v. GAWVT Motors, LLC*, 2019 WL 13275566, at *12 (N.D. Ga. Feb. 1, 2019)

(comments expressing racist stereotypes created a triable issue on a hostile work environment

claim). To the extent "[r]easonable jurors [could] disagree about whether these incidents would

negatively alter the working conditions of a reasonable employee . . . , the potential for such

disagreement renders summary judgment inappropriate." *Whidbee v. Garzarelli Food*

*Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999)).

The sufficiency of Dr. Dar's conduct is even clearer under the NYSHRL because "abusive conduct on the basis of multiple protected statuses may be considered together in evaluating a hostile work environment claim." *Delgado v. City of Stamford*, 2016 WL 81786, at *2 (D. Conn. Jan. 7, 2016); *see Banks*, 81 F.4th at 262; *Feingold*, 366 F.3d at 151–52. Dr. Dar's reference to Plaintiff's "menstrual cycle"—combined with his persistent remarks regarding the promiscuity of African American women generally and Plaintiff specifically—"communicated that her gender would always stand as a bar to full acceptance within the workplace." *Petrosino v. Bell Atl.*, 385 F.3d 210, 224 (2d Cir. 2004). His "pervasive accent mockery" also supports the conclusion that Plaintiff was subjected to a hostile work environment at Hem/Onc, especially in light of his statements maligning Jamaicans. *See Rosas v. Balter Sales Co. Inc.*, 2018 WL 3199253, at *6 (S.D.N.Y. June 29, 2018); *Edwards v. New Opportunities, Inc.*, 2008 WL 11489009, at *8 (D. Conn. July 1, 2008). Dr. Dar's statements that he would replace Plaintiff with someone younger, as a "a threat of employment termination[,] could reasonably be viewed as a form of discriminatory intimidation." *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 269 (2d Cir. 1999); *see also Williams*, 61 F.4th at 75. A reasonable jury could find those threats particularly "demeaning and disrespectful" because Dr. Dar simultaneously snapped his fingers at Plaintiff to speed her up. *Whiting-Turner Contracting Co. v. Express Servs., Inc.*, 2023 WL 2500270, at *2 (D. Md. Mar. 14, 2023).

Finally, Plaintiff's testimony indicates that she subjectively perceived Dr. Dar's behavior to be insulting and abusive in a manner that a reasonable jury could conclude altered the terms and conditions of her employment. Dkt. No. 46-1 at 26:9–24, 30:24–31:12, 39:24–40:2, 166:2–

14, 45:25–46:5, 47:24 –25; *see Vucinaj v. N.Y.C. Police Dep't*, 2020 WL 4677597, at *9 (S.D.N.Y. Aug. 12, 2020); *Devers v. SNC-Lavalin Generation, Inc.*, 2014 WL 4954623, at *4 (E.D.N.Y. Sept. 30, 2014); *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 520 (S.D.N.Y. 2000).  Plaintiff has therefore adduced sufficient evidence for her hostile work environment claims under Section 1981 and the NYSHRL to withstand Mount Sinai's motion for summary judgment.[6]

"Because [Plaintiff] has raised triable issues of material fact regarding her hostile work environment claims under Section 1981 and the NYSHRL, 'it follows that she has done the same under the NYCHRL's more lenient standard.'" *Fernandez v. Wenig Saltiel LLP*, 2024 WL 1345645, at *20 (E.D.N.Y. Mar. 29, 2024) (quoting *Williams*, 61 F.4th at 76).  A reasonable jury could easily find that Plaintiff was treated "less well" because of her gender, race, color, national origin, and age based on Dr. Dar's humiliating and "insensitive remarks."  *Edelman v. NYU Langone Health Sys.*, 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022); *see Modica v. N.Y.C. Dep't of Educ.*, 2021 WL 3408587, at *7 (S.D.N.Y. Aug. 4, 2021); *Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*, 2021 WL 1226658, at *8 (S.D.N.Y. Mar. 31, 2021); *Sanderson v. Leg Apparel LLC*, 2020 WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020).  Indeed, if credited by the jury, the explicit nature of Dr. Dar's comments leaves no doubt that they were the result of Plaintiff's protected characteristics.  *See Wilson v. JPMorgan Chase Bank, N.A.*, 2021 WL

---

[6] In opposing Mount Sinai's motion for summary judgment, Plaintiff also briefly suggests that the inaction of Bressler and McNicholas contributed to the hostile work environment at Hem/Onc.  Dkt. No. 54 at 15, 16.  But their inaction "did not by itself alter the terms and conditions of [Plaintiff's] employment; rather, it preserved the very circumstances that were the subject of the complaint[s].  Therefore the failure to [act on Plaintiff's] complaint[s] could not itself have contributed to or constituted a hostile work environment."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010).

5179914, at *6 (S.D.N.Y. Nov. 8, 2021).  Thus, the Court denies Mount Sinai's motion for
summary judgment on Plaintiff's hostile work environment claim under the NYCHRL.

## V.      Retaliation

According to Mount Sinai, Plaintiff has failed to raise a genuine dispute of material fact
on her retaliation claims challenging the non-renewal of her collaborative practice agreement
with Hem/Onc and the termination of her employment at the Faculty Practice.  Dkt. No. 51 at 26.
Plaintiff responds that she has adduced sufficient evidence to proceed to trial on whether those
adverse actions constituted retaliation for her complaints against Dr. Dar.  Dkt. No. 54 at 20.

"Retaliation claims under Title VII, the ADEA, Section 1983, and NYSHRL are analyzed
under the same legal framework."  *Nnebe v. City of New York*, 2023 WL 2393920, at *14
(S.D.N.Y. Jan. 30, 2023), *report and recommendation adopted*, 2023 WL 2088526 (S.D.N.Y.
Feb. 17, 2023).  To establish a prima facie case of retaliation under these statutes, a plaintiff must
show "(1) participation in a protected activity; (2) that the defendant knew of the protected
activity; (3) an adverse employment action; and (4) a causal connection between the protected
activity and the adverse employment action."  *Murillo-Roman v. Pension Boards—United
Church of Christ*, 2024 WL 246018, at *13 (S.D.N.Y. Jan. 23, 2024) (quoting *Torre v. Charter
Commc'ns, Inc.*, 493 F. Supp. 3d 276, 288–89 (S.D.N.Y. 2020)).  "If an employee 'complains or
is critical about the discriminatory employment practices of her employer, that employee has
engaged in a protected activity.'"  *Id.* (quoting *Littlejohn*, 795 F.3d at 318).  "For retaliation, 'an
adverse employment action is any action that could well dissuade a reasonable worker from
making or supporting a charge of discrimination.'"  *Mitchell v. N.Y.C. Dep't of Educ.*, 2021 WL
8013770, at *9 (S.D.N.Y. May 7, 2021), *report and recommendation adopted*, 2022 WL 621956.
The element of causation requires a plaintiff to demonstrate "that the retaliation was a but-for
cause of the employer's adverse action."  *Nnebe*, 2023 WL 2393920, at *14 (quoting *Duplan v.*

*City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)).  The plaintiff need not prove "that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Gittens v. Winthrop Hospitalist Assocs., P.C.*, 2022 WL 504490, at *6 (E.D.N.Y. Feb. 18, 2022) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015)).  A plaintiff can establish causation "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 462 (S.D.N.Y. 2023).  At the prima facie stage, plaintiff's burden is "minimal."  *Braunstein v. Sahara Plaza, LLC*, 2022 WL 17480962, at *3 (2d Cir. Dec. 7, 2022) (summary order) (quoting *Zann Kwan*, 737 F.3d at 844).

If the plaintiff "demonstrates the *prima facie* elements, the burden moves to the defendant to 'proffer a legitimate, non-retaliatory reason' for the adverse employment action."  *Mauze v. CBS Corp.*, 340 F. Supp. 3d 186, 210 (E.D.N.Y. 2018) (quoting *Fletcher v. ABM Bldg. Value*, 2018 WL 1801310, at *19 (S.D.N.Y. Mar. 28, 2018)); *see Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002).  Once "the defendant carries this burden, the plaintiff must then present evidence demonstrating that retaliation was a 'but-for; cause of the adverse action."  *Giurca v. Bon Secours Charity Health Sys.*, 2024 WL 763388, at *2 (2d Cir. Feb. 26, 2024) (summary order) (quoting *Zann Kwan*, 737 F.3d at 845).  Plaintiff can do so by showing that the "'legitimate, non-retaliatory reason' offered by the employer is mere pretext, and that the employer's 'desire to retaliate' was the real 'but-for cause of the challenged employment action.'"  *Russell v. N.Y. Univ.*, 739 F. App'x 28, 32 (2d Cir. 2018) (summary order) (quoting

40

*Ya-Chen Chen*, 805 F.3d at 70, 73).  But while "temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . , without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext."  *Green v. Mount Sinai Health Sys., Inc.*, 826 F. App'x 124, 126 (2d Cir. 2020) (summary order) (quoting *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010)).

"Retaliation claims under the NYCHRL, however, 'are subject to a broader standard'" than those under federal and state law.  *Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021) (quoting *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020)).

> [T]o make out an unlawful retaliation claim under the NYCHRL, a plaintiff must show that (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct.

*Robinson*, 2023 WL 4862772, at *40 (quoting *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 246 (2d Dep't 2021)).  The defendant then must articulate a legitimate, nonretaliatory reason for the challenged actions.  *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 364 (S.D.N.Y. 2012).  If the defendant does so, then the burden shifts back to the plaintiff; however, unlike under Title VII, the ADEA, Section 1981, and the NYSHRL, the plaintiff can satisfy her ultimate burden by "show[ing] that retaliation played *any* role in the defendants' alleged adverse actions."  *Cardwell v. Davis Polk & Wardwell LLP*, 2023 WL 2049800, at *35 (S.D.N.Y. Feb. 16, 2023) (emphasis added); *see also Hamburg v. N.Y. Univ. Sch. of Med.*, 62 N.Y.S.3d 26, 32 (1st Dep't 2017).

Plaintiff contends that Defendants engaged in two distinct acts of retaliation against her: the non-renewal of her agreement with Hem/Onc and the termination of her employment with the Faculty Practice. *See* Dkt. No. 54 at 20. Thus, the Court applies the foregoing standards to each separately.

### A.      Hem/Onc Non-Renewal

Mount Sinai contends that the Court must grant summary judgment on Plaintiff's retaliation claims regarding the non-renewal of her agreement with Hem/Onc because Plaintiff has not satisfied her prima facie case and, even if she had, she has not shown that Mount Sinai's nonretaliatory reason for that decision was pretextual. Dkt. No. 58 at 1. Plaintiff counters that she has raised a triable issue on her retaliation claims regarding the non-renewal of her contract because she submitted multiple complaints about Dr. Dar's behavior and Mount Sinai's purported nonretaliatory reason for that decision is belied by the evidence. Dkt. No. 54 at 19–21. Plaintiff's Title VII and ADEA claims regarding the non-renewal of her Hem/Onc contract are untimely, so only her Section 1981, NYSHRL, and NYCHRL retaliation claims remain.

Plaintiff has produced sufficient evidence to show that she engaged in protected activity related to her sex when she complained about Dr. Dar's behavior to McNicholas. It is undisputed that Plaintiff emailed McNicholas on July 15, 2018 to lodge a complaint about how Dr. Dar had disrespected her and invaded her personal space, and when Plaintiff "told him he has to stop grabbing the mouse and start respecting [her] personal space and time Dr. Dar asked if [Plaintiff] was 'On [her] period' ([her] menstrual cycle)." Dkt. No. 46-1 at Defs. Ex. 11; *see* Dkt. No. 52 ¶ 44; Dkt. No. 55 ¶ 44. Mount Sinai stresses that Plaintiff's email to McNicholas did not explicitly characterize Dr. Dar's behavior as discrimination. Dkt. No. 51 at 24. But Plaintiff "need not have explicitly used the words 'discrimination' or 'gender' to afford [her] complaints protected-activity status," and Dr. Dar's insulting reference to Plaintiff's menstrual

cycle was obviously not so gender neutral that those words would have been "the only way to put [Mount Sinai] on notice" that she was challenging sex-based discrimination. *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521–22 (S.D.N.Y. 2010) (Lynch, J., sitting by designation). Accordingly, Plaintiff's complaint to McNicholas about Dr. Dar was protected activity opposing sex-based discrimination and Mount Sinai "understood[] or could have reasonably understood" it as such. *Batchelor v. City of New York*, 12 F. Supp. 3d 458, 482 (E.D.N.Y. 2014) (quoting *Rosioreanu v. City of New York*, 526 F. App'x 118, 120 (2d Cir. 2013) (summary order).

But Plaintiff's email to McNicholas neither asserts nor describes any mistreatment based on race, color, national origin, or age. Dkt. No. 46-1 at Defs. Ex. 11. Dr. Dar's comments regarding African American women and Jamaicans and his threats to replace Plaintiff with a younger employee are notably absent from Plaintiff's email. Instead, to support her retaliation claims premised on those characteristics, Plaintiff notes that she first lodged an oral complaint against Dr. Dar during a conversation with McNicholas on July 13, 2018. Dkt. No. 54 at 19. According to McNicholas: "During this meeting, Ms. Gordon-Mallett told me that one of the doctors, Dr. Khalid Dar, had grabbed her computer mouse and that she had felt humiliated as a result. Ms Gordon-Mallett did not tell me that she thought that Dr. Dar was discriminating against her." Dkt. No. 48 ¶¶ 5–6. Plaintiff responds by citing two lines of her own deposition testimony describing that conversation: "I told her what was happening there [in Hem/Onc], a brief summary of what's been transpiring." Dkt. No. 46-1 at 188:20–21. At most, Plaintiff's entirely general statement raises "some metaphysical doubt" as to whether she described discrimination on the basis of race, color, national origin, or age to McNicholas during their meeting. *Picard Tr. for SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 49 F.4th 170, 185 (2d Cir. 2022) (quoting *Bellamy v. City of New York*, 914 F.3d 727, 754

(2d Cir. 2019)).  Yet more is required to defeat summary judgment.[7]  *Id.*; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (explaining "evidence that is 'merely colorable'" is insufficient (quoting *Anderson*, 477 U.S. at 249)); *N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 632 F. Supp. 3d 303, 306 (S.D.N.Y. 2022) ("[T]he non-moving party must advance more than a 'scintilla of evidence.'" (quoting *Anderson*, 477 U.S. at 252)).  As a result, Plaintiff has not established that she engaged in any protected activity related to race, color, national origin, or age that could support a retaliation claim for the non-renewal of her agreement with Hem/Onc.  *See Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 320 (N.D.N.Y. 2013) ("Plaintiff's complaints regarding Allen covered only gender-based discrimination, [so] she cannot premise her age-discrimination-based retaliation claims on this protected activity.").  That shortcoming is fatal to Plaintiff's Section 1981 retaliation claim based on Mount Sinai's decision not to renew her Hem/Onc contract "because section 1981 does not protect against . . . retaliation on the basis of sex or gender."  *Rolley-Radford v. Mod. Disposal Servs., Inc.*, 2023 WL 5105418, at *5 (W.D.N.Y. Aug. 9, 2023); *see Mejia v. City of New York*, 2020 WL 2837008, at *12 n.13 (E.D.N.Y. May 30, 2020) ("Unlike NYSHRL and NYCHRL, only race-based retaliation claims are actionable under Section 1981.").

Plaintiff has met the remaining elements of her prima facie sex-based retaliation claim.  Mount Sinai knew about her protected activity since Plaintiff emailed her complaint directly to

---

[7] Nor can Plaintiff rely on the complaint she lodged with Mount Sinai's Diversity and Inclusion Department on November 13, 2018 to support a race, color, national origin, or age retaliation claim based on the non-renewal of her Hem/Onc contract.  Plaintiff submitted her complaint to the Diversity and Inclusion Department two months after Mount Sinai informed Plaintiff that it would not renew her agreement, Dkt. No. 52 ¶¶ 61, 64; Dkt. No. 55 ¶¶ 61, 64, so Mount Sinai could not have decided not to renew her agreement in retaliation for that complaint, *see McAllister v. Queens Borough Pub. Libr.*, 309 F. App'x 457, 459 (2d Cir. 2009) (summary order); *Warmin v. N.Y.C. Dep't of Educ.*, 2021 WL 517777, at *9 (S.D.N.Y. Feb. 11, 2021).

McNicholas.  *See Germano v. Webster Cent. Sch. Dist.*, 2012 WL 6026276, at \*5 (W.D.N.Y. Dec. 4, 2012).  Though Mount Sinai asserts that Plaintiff has not shown a retaliatory act that would "deter employees from complaining about discrimination," Dkt. No. 58 at 8, a reasonable jury could find that the non-renewal of Plaintiff's agreement with Hem/Onc would deter employees from reporting gender-based discrimination, *see Ghent v. Moore*, 519 F. Supp. 2d 328, 336 (W.D.N.Y. 2007) ("[T]he non-renewal of an employment contract satisfies the adverse-action requirement for purposes of a plaintiff's prima facie case."), *aff'd*, 324 F. App'x 55 (2d Cir. 2009); *see also Leibowitz v. Cornell Univ.*, 584 F.3d 487, 500 (2d Cir. 2009).  The temporal proximity of less than two months between Plaintiff's July 15, 2018 email to McNicholas and Mount Sinai's non-renewal of her contract on September 14, 2018 suffices to show a causal connection at the prima facie stage.  *See Gorzynski*, 596 F.3d at 111 (2d Cir. 2010); *Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 336 (N.D.N.Y. 2015), *aff'd*, 634 F. App'x 318 (2d Cir. 2016); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003).  Furthermore, Dr. Dar was unquestionably aware of Plaintiff's complaint against him by virtue of Winter's "interview[ with] Dar regarding Plaintiff's complaint," in which Dr. Dar denied that he asked Plaintiff "if she was on her period."  Dkt. No. 52 ¶¶ 47–48; Dkt. No. 55 ¶¶ 47–48.  And Mount Sinai later told Plaintiff that Dr. Dar had decided not to renew her contract.  Dkt. No. 52 ¶ 61; Dkt. No. 55 ¶ 61.  Dr. Dar's stated role in the non-renewal of Plaintiff's agreement with Hem/Onc likewise supports causation for purposes of Plaintiff's prima facie case.

As explained in connection with Plaintiff's retaliation claims, Mount Sinai has articulated a legitimate nonretaliatory reason for its decision not to renew Plaintiff's agreement with Hem/Onc: namely, that Plaintiff posed a risk to the care and safety of Hem/Onc's vulnerable patients because she did not possess the requisite OCN certification.  Dkt. No. 52 ¶¶ 58, 61; Dkt.

No. 55 ¶¶ 58, 61.  Plaintiff's "lack of proper qualifications" was a legitimate nonretaliatory reason for the non-renewal her contract.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000); *see Black v. Tomlinson*, 425 F. Supp. 2d 101, 110 (D.D.C. 2006); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 129 (2d Cir. 2013).

    Yet Plaintiff has raised a triable issue as to whether retaliation was the but-for cause of Mount Sinai's non-renewal of her collaborative practice agreement.  There is a clear "discrepanc[y]," *Zann Kwan*, 737 F.3d at 846, between Mount Sinai's determination in September 2018 that Plaintiff's lack of OCN certification posed an intolerable risk to patient safety and the December 2018 deadline Plaintiff and Mount Sinai had set for obtaining that certification in May 2018, Dkt. No. 46-1 at Defs. Ex. 30.  Based on that discrepancy, a reasonable jury could find that Mount Sinai's stated reason for non-renewal was merely a "pretext for retaliation." *Gunning v. N.Y. State Just. Ctr. for Prot. of People with Special Needs*, 2023 WL 8716596, at *8 (N.D.N.Y. Dec. 18, 2023).  And, as explained *supra*, a jury would not necessarily credit Mount Sinai's response—that Plaintiff had failed to make sufficient progress towards that goal, Dkt. No. 58 at 6—as that explanation is vague and stands in tension with the specific milestone set for Plaintiff, *see Johnson*, 2022 WL 4538452, at *16; *Perry*, 2022 WL 4456273, at *12.  Mount Sinai further contends that Dr. Dar "expressed his dissatisfaction with Plaintiff prior to any complaint and, as a result, there can be no inference of retaliation."  Dkt. No. 58 at 8.  "[C]ourts have held that, where discipline began before an employee's protected activity and the employee's poor performance continued after the protected activity, the continuation and even gradual escalation of discipline cannot support a retaliation claim." *Europe v. Equinox Holdings, Inc.*, 2022 WL 4124763, at *10 (S.D.N.Y. Sept. 9, 2022).  But that consideration is not dispositive here, since Mount Sinai's avowed rationale for non-renewal was

Plaintiff's lack of OCN certification, not any performance issues.  And, far from a gradual escalation of discipline for failing to obtain her OCN certification, "[P]laintiff had no warning" that Mount Sinai would decline to renew her agreement prior to the December 2018 deadline. *Burris v. Hous. & Servs. Inc.*, 2023 WL 1966120, at *11 (S.D.N.Y. Feb. 13, 2023).  Plaintiff has also produced evidence that would support a finding that retaliation was the real reason for Mount Sinai's decision not to renew her contract with Hem/Onc.  Despite Dr. Dar's denial of any involvement in the non-renewal decision, Dkt. No. 53-2 at 33:2–10, it is undisputed that after Winter interviewed him regarding Plaintiff's complaint to McNicholas, Mount Sinai told Plaintiff that Dr. Dar had decided not to renew her contract, Dkt. No. 52 ¶¶ 48, 61; Dkt. No. 55 ¶¶ 48, 61.  That contradiction—in conjunction with the evidence of pretext—raises a triable issue as to whether the non-renewal of Plaintiff's contract with Hem/Onc was the result of Dr. Dar's retaliatory intent.

Because Plaintiff's sex-based retaliation claim under the NYSHRL withstands summary judgment, so too does her gender-based retaliation claim under the NYCHRL, "whose retaliation standard is similar to—but in part more permissive than—its federal and state analogues." *Bethea v. Winfield Sec. Corp.*, 2023 WL 8650004, at *6 (S.D.N.Y. Dec. 14, 2023) (quoting *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 334 (S.D.N.Y. 2020)).  Plaintiff's complaint to McNicholas, the weaknesses in Mount Sinai's purported reason for non-renewal, and Dr. Dar's stated role in that decision satisfy the NYCHRL's "uniquely broad" retaliation provision.  *See Stanley v. Mount Sinai Health Sys., Inc.*, 2023 WL 8355393, at *13 (S.D.N.Y. Dec. 1, 2023) (quoting *Mihalik*, 715 F.3d at 109).  As a result, the Court denies Mount Sinai's motion to dismiss her NYCHRL gender-based retaliation claim predicated on the non-renewal of her contract with Hem/Onc.

B.        **Faculty Practice Termination**

Finally, Mount Sinai contends that Plaintiff has failed to establish a genuine dispute of

material fact as to whether the termination of her employment at the Faculty Practice was

retaliatory.  Dkt. No. 51 at 26.  In response, Plaintiff stresses that "Dr. Mack and Dr. Casely-

Hayford were also aware she had made a complaint about Dr. Dar," and urges the Court to

consider the surrounding circumstances to find a triable issue on her retaliation claims.  Dkt. No.

54 at 20.

Plaintiff's evidence is too scanty to establish a prima facie case of retaliation under Title

VII, the ADEA, Section 1981, or the NYSRHL.  Plaintiff engaged in protected activity when she

lodged her complaint against Dr. Dar to McNicholas on July 15, 2018, Dkt. No. 52 ¶ 44; Dkt.

No. 55 ¶ 44, and when she submitted another complaint against Dr. Dar to the Diversity and

Inclusion Department on November 13, 2018, Dkt. No. 52 ¶ 64; Dkt. No. 55 ¶ 64.  Unlike the

former, the latter claimed that Plaintiff had experienced race and color discrimination in

Hem/Onc.  Dkt. No. 53-8 at 2; *see* Dkt. No. 46-1 at Defs. Ex. 15.  However, the November

complaint does not mention or describe any actions that could be reasonably understood as age

discrimination.  *See* Dkt. No. 53-8 at 5–6; Dkt. No. 46-1 at Defs. Ex. 15.  Plaintiff has therefore

failed to produce evidence that she engaged in any protected activity prior to the termination of

her employment at the Faculty Practice that could support an ADEA retaliation claim.  *See*

*Meyer v. McDonald*, 241 F. Supp. 3d 379, 392 (E.D.N.Y. 2017) ("[A] retaliation claim under the

ADEA is limited to retaliation for an employee's prior claims of age discrimination."), *aff'd sub*

*nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018).  Additionally, neither of Plaintiff's

complaints against Dr. Dar mention his comments about Jamaicans or his imitations of Plaintiff's

accent.  Nor do they reference any other incidents that could be reasonably interpreted as

national origin discrimination.  *See O'Brien v. City of N.Y., Dep't of Educ.*, 2023 WL 5200476,

48

at *11 (E.D.N.Y. Aug. 14, 2023).  Accordingly, Plaintiff's retaliation claims regarding the

Faculty Practice must be limited to retaliation for complaints about gender, sex, race, and color

discrimination.  For those claims, Plaintiff has shown that Mount Sinai knew about her protected

activities, as she sent her complaints to Mount Sinai's Labor Relations and Diversity Inclusion

Departments.  *See Moore v. Hadestown Broadway Ltd. Liab. Co.*, 2024 WL 989843, at *14

(S.D.N.Y. Mar. 7, 2024).  And the termination of Plaintiff's employment at the Faculty Practice

was clearly an adverse employment action.  *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,

653 F. Supp. 3d 80, 96 (S.D.N.Y. 2023); *Farmer*, 473 F. Supp. 3d at 331.

But Plaintiff's retaliation claims founder on the final element of her prima facie case—a

causal connection between her protected activities and Mount Sinai's termination of her

employment in the Faculty Practice.  The temporal gap between Plaintiff's complaints on July

15, 2018 and November 13, 2018 and the termination of her employment at the Faculty Practice

on July 15, 2019 is too wide to support an inference of retaliation.  *See Beachum v. AWISCO*

*N.Y.*, 785 F. Supp. 2d 84, 99 (S.D.N.Y. 2011) ("Plaintiff filed his complaint with the EEOC on

June 6, 2008, more than four months before his termination on October 27, 2008.  This is far too

much time to create the necessary inference."), *aff'd*, 459 F. App'x 58 (2d Cir. 2012); *see also*

*Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012) (collecting cases).

Moreover, Dr. Dar did not work in the Faculty Practice and there is no evidence that he exerted

any influence over Mount Sinai's decision to terminate her employment there.  *See* Dkt. No. 52

¶ 73; Dkt. No. 55 ¶ 73.

Plaintiff argues that the circumstances surrounding the termination of her employment

with the Faculty Practice nevertheless indicate that the decision was the product of retaliation

because Drs. Mack and Casely-Hayford were aware that she had made a complaint about Dr.

Dar.  Dkt. No. 54 at 20.  Yet Drs. Mack and Casely-Hayford's mere knowledge that Plaintiff

engaged in protected activity is insufficient for a jury to infer that they acted with retaliatory

animus when they terminated her employment from the Faculty Practice.  *See Sarmiento v.

Queens Coll. CUNY*, 153 F. App'x 21, 23 (2d Cir. 2005) (summary order) ("Plaintiff alleged no

fact allowing a reasonable jury to conclude that defendant's (admitted) knowledge about

[plaintiff's] past anti-discrimination activities causally led to the rejection of [his] employment

applications."); *see also Donaldson v. Coca Cola Refreshments USA, Inc.*, 2020 WL 2542779, at

*8 (D. Conn. May 19, 2020) ("Because an employer's knowledge of protected activity is a

necessary but not a sufficient condition for establishing a prima facie claim of retaliation, the fact

that [a manager] also knew about Plaintiff's protected activity cannot establish causation without

more.").  Plaintiff also contends that the Court should consider the "inexplicably long time"

Mount Sinai took to clear Plaintiff to return to work as evidence of retaliatory animus.  Dkt. No.

54 at 20.  But that delay was hardly inexplicable.  Rather, Plaintiff was out on a medical leave of

absence.  Dkt. No. 52 ¶ 63; Dkt. No. 55 ¶ 63.  And Plaintiff does not argue, much less show, that

the delay in her clearance was in any way connected to Mount Sinai's decision to terminate her

employment at the Faculty Practice or attributable to Drs. Mack or Casely-Hayford.[8]  *See* Dkt.

---

[8] Nor does Plaintiff argue that she has shown causation by virtue of Dr. Mack's purported
statement to a Faculty Practice nurse that the rumors from Plaintiff's prior department were true.
The Court therefore deems that argument waived.  *See Triodetic Inc. v. Statue of Liberty IV,
LLC*, 582 F. App'x 39, 40 (2d Cir. 2014) (summary order) ("[P]laintiff never raised these
arguments in its opposition to defendants' motion for summary judgment.  Accordingly, these
arguments were waived."); *Austin Sanctuary Network v. U.S. Immigr. & Customs Enf't*, 2022
WL 4356732, at *29 (S.D.N.Y. Sept. 19, 2022).  In any event, Dr. Mack's "one ambiguous
comment . . . is insufficient to make even a prima facie showing of a causal connection."
*Alexidor v. Donahoe*, 2016 WL 5720789, at *10 n.15 (S.D.N.Y. Sept. 30, 2016); *see also
Sarmiento*, 153 F. App'x at 23 ("This ambiguous-at-worst comment does not satisfy [plaintiff's]
burden of showing causation."); *Dayes v. Pace Univ.*, 2 F. App'x 204, 208 (2d Cir. 2001)
(summary order).

No. 54 at 20.  To the contrary, Plaintiff was hired by the Faculty Practice while on medical leave and she commenced her employment there immediately after that leave ended.  No reasonable jury could infer that any delay that preceded Plaintiff joining the Faculty Practice reveals that Drs. Mack and Casely-Hayford terminated Plaintiff's employment to retaliate against her.

If Plaintiff had established a prima facie case of retaliation based on her termination from the Faculty Practice, her retaliation claims would still fail at the remaining stages of the *McDonnell Douglas* analysis.  Mount Sinai has articulated a legitimate, nonretaliatory reason for that decision, as Dr. Mack told Plaintiff that she had failed to act with the requisite professionalism when interacting with the Faculty Practice staff, Dkt. No. 52 ¶ 93; Dkt. No. 55 ¶ 93, and McKenzie had lodged a complaint against Plaintiff just four days earlier detailing Plaintiff's disrespectful behavior towards staff members, Dkt. No. 52 ¶¶ 87–91; Dkt. No. 55 ¶¶ 87–91.  In lieu of "evidence showing that [Mount Sinai's] legitimate, non-retaliatory reason . . . was a pretext for retaliation," *Chukwurah v. Stop & Shop Supermarket Co. LLC*, 354 F. App'x 492, 496 (2d Cir. 2009) (summary order), or "that the real reason was, in fact, retaliation," *Shahid v. City of New York*, 2008 WL 11483068, at *7 (S.D.N.Y. Sept. 3, 2008), *aff'd*, 357 F. App'x 329 (2d Cir. 2009), Plaintiff flatly asserts that she "disputed the reasons given as to why Dr. Mack terminated her from the Faculty Practice," Dkt. No. 54 at 20.  But that "conclusory allegation[ is] not enough to raise a triable issue of fact regarding pretext."  *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 251 (N.D.N.Y. 2010).  "Thus, because Mount Sinai advances a legitimate, non-retaliatory reason for [Plaintiff's] discharge and because [Plaintiff] offers nothing more than her own conclusory allegations to challenge this reason or meet her ultimate burden of proving retaliation, [the Court] conclude[s] that summary judgment [must be] granted" in favor of Mount Sinai on Plaintiff's retaliation claims under Title VII, Section 1981, and the NYSHRL

51

based on her termination from the Faculty Practice.  *Pointdujour v. Mount Sinai Hosp.*, 121 F. App'x 895, 897–98 (2d Cir. 2005) (summary order).

    The lack of evidence that retaliatory animus played any role in Mount Sinai's decision to end Plaintiff's employment with the Faculty Practice is also fatal to Plaintiff's retaliation claim under the NYCHRL.  "Even under the NYCHRL's liberal standard of liability, [Plaintiff] must still provide evidence showing a causal link between her complaints and [Mount Sinai's] allegedly retaliatory actions."  *United States v. N. Metro. Found. for Healthcare, Inc.*, 2019 WL 1597296, at *18 (E.D.N.Y. Apr. 14, 2019).  Yet there is simply no evidence that Drs. Mack or Casely-Hayford harbored retaliatory animus against Plaintiff, nor that Dr. Dar influenced the decision to fire Plaintiff from the Faculty Practice.  Accordingly, Plaintiff "has not offered sufficient evidence to raise a jury question as to whether defendant[s'] actions were caused even 'in part by . . . retaliatory motives,' or whether retaliation was 'one of the motivating factors, even if it was not the sole motivating factor.'"  *Baldwin v. Goddard Riverside Cmty. Ctr.*, 615 F. App'x 704, 706 (2d Cir. 2015) (summary order) (quoting *Mihalik*, 715 F.3d at 113, and then *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (1st Dep't 2012)).  Instead, "Plaintiff offers nothing but conclusory assertions of retaliatory motive [and t]hese assertions are insufficient at summary judgment" under the NYCHRL, just as they are under Title VII, Section 1981, and the NYSHRL.  *Noel v. Interpublic Grp. of Co's Inc.*, 2013 WL 1955879, at *4 (S.D.N.Y. May 13, 2013).  Mount Sinai is therefore entitled to summary judgment on Plaintiff's NYCHRL retaliation claim predicated on the termination of her employment with the Faculty Practice.  *See Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020).

## CONCLUSION

    Mount Sinai's motion for summary judgment, Dkt. No. 45 is GRANTED IN PART and DENIED IN PART.  Summary judgment is granted on all of Plaintiff's claims except: her

Section 1981, NYSHRL, and NYCHRL discrimination claims arising out of the non-renewal of her contract with Hem/Onc; her hostile work environment claims under Section 1981, the NYSHRL, and the NYCHRL arising out of her work at Hem/Onc; and her gender-based NYSHRL and NYCHRL retaliation claims arising out of the non-renewal of her contract with Hem/Onc.

The Clerk of Court is respectfully directed to close Dkt. No. 45.

SO ORDERED.

Dated: April 8, 2024
     New York, New York

_____
LEWIS J. LIMAN
United States District Judge